**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:19-cv-80074-Rosenberg/Reinhart**

**UMB BANK, N.A., as Plan Trustee of The
Limited Creditors' Liquidating Trust,**

       **Plaintiff,**

**v.**

**SUN CAPITAL PARTNERS V, LP,
SUN MOD FASHIONS IV, LLC,
SUN MOD FASHIONS V, LLC, and
H.I.G. SUN PARTNERS, LLC,**

       **Defendants.**

**DEFENDANTS' JOINT MOTION TO TRANSFER VENUE
AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Jodi A. Avila (Florida Bar No. 102787)
jodi.avila@bakermckenzie.com
**BAKER & McKENZIE LLP**
*Attorneys for Defendants*
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile: (305) 789-8953

Michael A. Duffy
michael.duffy@bakermckenzie.com
(*pro hac vice*)
Michael C. McCutcheon
michael.mccutcheon@bakermckenzie.com
(*pro hac vice* )
BAKER MCKENZIE, LLP
300 East Randolph Street #5000
Chicago, Illinois 60601
Telephone (312) 861-8000

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 3

A.   Sun Capital's Acquisition of The Limited and The Dividend................................ 3

B.   The Limited's Demise and Eventual Bankruptcy ................................................ 4

C.   The Parties to this Action ................................................................................. 6

D.   Potential Witnesses to this Action..................................................................... 7

APPLICABLE LAW ................................................................................................ 8

ARGUMENT ......................................................................................................... 10

I.    A transfer to the Delaware Bankruptcy Court is "in the interest of justice" in this
      case .............................................................................................................. 10

      A.   This action belongs in the "home court"—the District of Delaware.......................... 10

      B.   Most of the other "interest of justice" factors weigh in favor of a transfer ................. 12

      C.   Plaintiff's Choice of Forum Should be Given Little to No Weight............................ 13

II.   South Florida is no more convenient for the parties and witnesses than Delaware ............ 14

III.  Given that South Florida is not a more convenient forum than Delaware, the
      plaintiff's choice to bring its action in this Court appears to be forum-shopping............... 16

IV.   Alternatively, transfer is warranted under 28 U.S.C. § 1404(a) ......................................... 17

CONCLUSION..................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B. Real Estate v. Bruno's, Inc. (In re Bruno's, Inc.)*,
  227 B.R. 311 (Bankr. N.D. Ala. 1998) ............................................................10, 12

*Alderwoods Group, Inc. v. Garcia*,
  682 F.3d 958 (11th Cir. 2012) .........................................................................8, 9

*Bonner v. Pritchard*,
  661 F.2d 1206 (11th Cir. 1981) (holding that all 5th Circuit opinions issued
  prior to October 1981 are controlling precedent in the 11 Circuit) .........................10

*Burns v. Grupo Mex. S.A. de C.V.*,
  No. 07 Civ. 3496, 2007 U.S. Dist. LEXIS 84514 (S.D.N.Y. Nov. 16, 2007) ........................11

*In re Butcher*,
  46 B.R. 109 (Bankr. N. D. Ga. 1985) ...................................................................11

*Campbell v. Williams*,
  No. 14-cv-097, 2015 U.S. Dist. LEXIS 76213 (S.D. Tex. June 12, 2015)............................11

*CBS Interactive, Inc. v. NFL Players Ass'n*,
  259 F.R.D. 398 (D. Minn. 2009)...........................................................................15

*Chex Sys., Inc. v. DP Bureau, LLC*,
  No. 8:10-cv-2465-T-33MAP, 2011 U.S. Dist. LEXIS 130392 (M.D. Fla. Nov.
  10, 2011) ...........................................................................................17

*In re Commonwealth Oil Refining Co.*,
  596 F.2d 1239 (5th Cir. 1979) .......................................................................10, 11

*Credit Suisse AG v. Appaloosa Inv. Ltd. P'Ship I*,
  No. 15-cv-3474, 2015 U.S. Dist. LEXIS 120020 (S.D.N.Y. Sept. 9, 2015) ....................13, 16

*Giuliano v. CDSI Holding Co.*,
  No. 13-2776, 2014 U.S. Dist. LEXIS 34611 (E.D. Pa. Mar. 17, 2014)...................................11

*Holmes v. Grubman (In re Holmes)*,
  306 B.R. 11 (Bankr. M.D. Ga. 2004)....................................................................17

*Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*,
  417 F.3d 953 (8th Cir. 2005) ............................................................................12

*Irwin v. Beloit Corp. (In re Harnischfeger Indus.)*,
  246 B.R. 421 (Bankr. N.D. Ala. 2000) ...............................................................8, 9

*Estate of Jackson v. Schron (In re Fundamental Long Term Care, Inc.)*,
873 F.3d 1325 (11th Cir. 2017) ...........................................................................8, 9

*Jim Walter Res., Inc. v. Belcher*,
146 B.R. 1008 (Bankr. M.D. Fla. 1992) .................................................................9

*La Seguridad v. Transytur Line*,
707 F.2d 1304 (11th Cir. 1983) ..........................................................................13

*In re LSC Wind Down, LLC, et al.*,
No. 17-10124, Case.............................................................................................1

*In re LSC Wind Down, LLC, et al.*,
No. 17-10124, Disclosure Statement With Respect to Joint Chapter 11 ..............6, 7

*In re Manville Foreset Prods. Corp.*,
896 F.2d 1384 (2nd Cir. 1990)........................................................................10, 11

*Microspherix LLC v. Biocompatibles, Inc.*,
No. 9:11-cv-80813-KMM, 2012 U.S. Dist. LEXIS 8359 (S. D. Fla. Jan. 25,
2012) .................................................................................................................16

*Morrissey v. Subaru of Am., Inc.*,
No 1:15-cv-21106-KMM, 2015 U.S. Dist. LEXIS 173401 (S.D. Fla. Dec. 31,
2015) .............................................................................................................13, 14

*Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*,
277 B.R. 5 (S.D.N.Y. 2002)..........................................................................12, 16

*Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*,
No. 13 Civ. 5349, 2013 U.S. Dist. LEXIS 153727 (S.D.N.Y. Oct. 22, 2013) ........10, 11

*Terry Mfg. Co. v. Steel Law Firm, P.C. (In re Terry Mfg. Co.)*,
323 B.R. 507 (Bankr. M.D. Ala. 2005)..............................................................8, 11

*Zazzali v. 1031 Exch. Group (In re DBSI, Inc.)*,
478 B.R. 192 (Bankr. Del. 2012)................................................................12, 13, 15

**Statutes**

11 U.S.C. § 544(b) and 550(a) ..........................................................................8

28 U.S.C. § 1334(b) ......................................................................................11

28 U.S.C. § 1404(a) ...................................................................................16, 17

28 U.S.C. § 1412.................................................................................... *passim*

## INTRODUCTION

> *"It will be a most unusual trustee or most unusual situation that would cause a suit under section 544(b) to be brought anywhere other than the home court."*

– 1 Collier on Bankruptcy ¶ 4.03

In January of 2017, in the midst of a prolonged crisis in the retail sector, the women's apparel store, The Limited, filed for bankruptcy protection before the United States Bankruptcy Court for the District of Delaware.  Since the commencement of those proceedings over two years ago, the Delaware bankruptcy court has distributed millions of dollars of assets, adjudicated hundreds of creditor claims, conducted countless adversary proceedings, and issued dozens of orders—***all relating to The Limited and its operations***.[1]  Yet, in spite of the Delaware court's intimate knowledge of The Limited, gained through hundreds of hours of judicial and administrative time, plaintiff has inexplicably filed the instant case, the largest adversary proceeding in The Limited bankruptcy to date, against defendants, affiliates of The Limited's largest shareholder, Sun Capital,[2] in West Palm Beach, Florida.

For a host of reasons, this case should be transferred to the District of Delaware.[3]  Indeed, prior to plaintiff's Complaint, this Court has had no relation to (much less involvement in) The Limited's bankruptcy.  By contrast, after two years of administering that company's estate, the Delaware bankruptcy court is very familiar with The Limited *and* Sun Capital (which has filed proofs of claim in and appeared before that court).  Additionally, the Delaware bankruptcy court has overseen all other cases initiated by the plaintiff in this action and is well-acquainted with the creditors on whose behalf plaintiff seeks relief.  It would take an inordinate amount of time for

---

[1] Ex. A, *In re LSC Wind Down, LLC, et al.*, No. 17-10124, Case History.

[2] Defendants Sun Capital Partners V LP, Sun Mod Fashions IV, LLC, Sun Mod Fashions V, LLC are all affiliates of Sun Capital Partners, Inc.  H.I.G. Sun Partners, Inc. is an affiliate of the private investment firm, H.I.G. Capital, which, in certain instances invests with Sun Capital affiliates.  For ease of reference, this brief refers generally to Sun Capital, instead of the specific, separately incorporated, affiliates and partners which may have participated in a particular transaction.

[3] Upon receipt, the United States District Court for the District of Delaware will refer these proceedings to the Delaware bankruptcy court consistent with its February 29, 2012 Amended Standing Order concerning any or all proceedings arising under Title 11 or arising in or related to a case under Title 11.

this Court, as situated, to accumulate the knowledge and familiarity of The Limited and its history. Making matters worse, the plaintiff's unusual decision to bring this case in South Florida, as opposed Delaware, cannot be explained by the location of the parties or the witnesses. All but one of the defendants are Delaware entities, which operate nationwide. Plaintiff itself is a resident of Missouri, ***not*** Florida. Of the 121 creditors listed in Exhibit A to plaintiff's Complaint ("Compl."), only two entities arguably reside in Florida, and both of those entities and 61 other creditors are Delaware entities. Moreover, the most central witnesses in this case live in California, New York, Ohio, Massachusetts, with only one within 100 miles of this Court. Thus, whether this case is tried in Florida or Delaware, the vast majority of witnesses will have to travel more than 100 miles to the courthouse.

Given these facts, it is clear that plaintiff's choice of venue was not driven by convenience or judicial economy, but, instead, by a desire to obtain a tactical advantage by exploiting a perceived difference in governing law.[4] Indeed, plaintiff knows that its entire case, which is centered on a 2011 dividend The Limited paid to defendants ***over seven years ago***, is time-barred under Delaware law. Plaintiff wrongly believes that its chances of surviving dismissal will increase if this Court, as opposed to the court presiding over the entirety of The Limited's bankruptcy, applies its local law. But the law does not permit such strategic venue choices, and this Court should reject the plaintiff's attempt to exploit alleged differences between Delaware and Florida law. As the record makes plain, there is no defensible reason why this case, which seeks relief for a bankrupt estate located in Delaware, should proceed outside of that state. For these reasons, and as stated more fully below, this case should be immediately stayed and transferred to the Delaware bankruptcy court, which is well-equipped to preside over it alongside the dozens of other adversary disputes relating to The Limited.

---

[4] Concurrently with this motion, defendants have filed a motion to dismiss plaintiff's complaint, since it is untimely under the Florida Uniform Fraudulent Transfer Act's ("FUFTA") four-year statute of repose.

## FACTUAL BACKGROUND

### A.   SUN CAPITAL'S ACQUISITION OF THE LIMITED AND THE DIVIDEND

In August of 2007, with major stock market indices at all time highs, Sun Capital Partners, Inc., a Florida-based private investment firm which specializes in innovative and creative management techniques to turnaround distressed businesses, acquired a 75% interest in The Limited.  Compl. at ¶ 27.  According to plaintiff's Complaint, Sun Capital made its investment in The Limited after that company had experienced "more than a decade of sustained losses and decline."  Compl. at ¶ 26.  As plaintiff alleges, The Limited's parent company "was so desperate to unload the unprofitable business—which hadn't turned a profit in nearly 15 years— that it gave up 75% of its ownership . . . without receiving any cash consideration in exchange, reporting a $72 million loss on the divestiture in its public securities filings." *Id*.

But these statements concerning Sun Capital's contributions to The Limited belie the truth.  In fact, after Sun Capital's investment, The Limited experienced a turnaround, ***even*** during the Great Recession, which commenced almost immediately after the 2007 acquisition. Indeed, as evidence of this improved performance, on June 10, 2010, after two years of disastrous economic conditions, The Limited redeemed the remaining 25% of its outstanding shares for $32 million, a stake which plaintiff's allege had a negative value at the time of the 2007 Stock Purchase Agreement.  Compl. at ¶ 30.

During the months following the 2010 redemption of shares, The Limited grew its retail footprint by opening new stores, a feat the company had not accomplished in over a decade.[5] Given its improved results, The Limited's board of managers decided in December of 2011, to grant a one-time $42,158,299.47 dividend to its shareholders (the "2011 Dividend"). To that end, the board retained an independent valuation company, Capstone Valuation Services, LLC ("Capstone"), to offer an opinion as to the propriety of issuing a dividend.[6]  Capstone was a financial advisory firm engaged in the valuation of businesses in connection with mergers and

---

[5] Ex. B, Aug. 23, 2011 Management Update Meeting ("MUM") presentation, at p. 4.

[6] *See* Ex. C, Retention of Capstone.

acquisitions, leveraged buyouts, dividend distributions and private placements, including reviews of solvency and surplus.[7]

In analyzing the propriety of the proposed dividend, Capstone reviewed and examined four years of audited financial statements for The Limited, a 5-year consolidated P&L forecast summary, a 5-year consolidated balance sheet forecast, and a 5-year consolidated liquidity forecast.[8]   Capstone also reviewed The Limited's presentations to its lenders concerning the proposed dividend, interviewed The Limited's executives, visited The Limited's corporate headquarters, and reviewed all relevant credit and loan agreements related to the company and the proposed $45 million dividend.[9]   In rendering its solvency opinion, Capstone concluded that, once the 2011 Dividend was paid, The Limited's "aggregate assets [would] exceed [its] total probable liability on its existing debts," The Limited would "be able to pay its debts and other liabilities … as such debts mature," and The Limited would "not have unreasonably small capital for the business in which it [was] engaged."[10] In addition to Capstone's opinion, The Limited's board briefed the company's lenders  (by far its largest group of creditors) of their intent to issue the 2011 Dividend, and received no objection.[11]   Only after receiving a favorable solvency opinion from Capstone, and informing The Limited's lenders, did the company's board approve the Dividend.

**B.    THE LIMITED'S DEMISE AND EVENTUAL BANKRUPTCY**

Now, over seven years after the 2011 Dividend, plaintiff has filed its Complaint with this Court, alleging, for the first time, that its payment rendered the company insolvent, resulting in its bankruptcy *over five years later*.   Contrary to plaintiff's  account, the 2011 Dividend did not transform The Limited, a $130 million company at the time, into "little more than a zombie company that was doomed to fail."   Compl. at ¶ 44.  Indeed, in 2012—the year ***after*** the 2011 Dividend was paid—The Limited's EBITDA exceeded 2011's EBITDA by $1.3 million, beating

---

[7] *See* Ex. D, Capstone Solvency Opinion at 3.

[8] *Id.* at 3-4.

[9] *Id.*

[10] *Id.* at 5.

[11] *Id.* at 2.

its budgeted EBITDA by $200,000.[12] The Limited's e-commerce business continued to grow, from $8.8 million EBITDA in 2010 to $34.8 million EBITDA in 2014.[13] Indeed, when the 2011 Dividend was paid, the company continued to operate without any operational (or other) difficulty. However, what The Limited's board could not (and did not) predict in 2011 was the extent to which mall-based retail stores would be decimated by competitors in the e-commerce space. Over the next five years, The Limited faced challenges as its strategy of expanding its retail footprint while closing unprofitable stores faced large headwinds in store traffic trends.[14]

Five years after the 2011 Dividend was declared, and unable to fight the overarching economic trend away from brick and mortar stores and towards e-commerce, in January of 2017, The Limited was forced to file for bankruptcy protection, joining countless other retailers that have suffered the same fate.[15] The Delaware bankruptcy court, of course, has already been comprehensively briefed regarding The Limited's history of operations and the events leading to its bankruptcy. Indeed, The Limited has already identified the cause of its demise in its disclosure statement filed with the Delaware bankruptcy court:

> Despite years of popularity, the Debtors, like the rest of the retail industry, faced a challenging commercial environment over the last several years, brought on by increased competition, particularly with regard to large fast fashion retailers, and the shift away from shopping at brick and mortar stores. The increase in online shopping and decrease in mall traffic particularly affect mall-based retailers, such as the Debtors, who maintained significant rent and payroll obligations to operate

---

[12] *See, e.g.,* Ex. E, Feb. 22, 2012 MUM at 3, demonstrating EBITDA beating budget by $0.2 million and the prior year by $1.3 million.

[13] *Compare* Ex. F, Jan. 24, 2011 MUM *with* Ex. G, Jan. 26, 2015 MUM.

[14] *See* Ex. H, May 1, 2014 MUM at 2, demonstrating -20% store traffic trends.

[15] *See* Hayley Peterson, *The Retail Apocalypse Has Officially Descended on America,* THE BUSINESS INSIDER, (Mar. 21, 2017), https://www.businessinsider.com/the-retail-apocalypse-has-officially-descended-on-america-2017-3; *see also* Lauren Thomas, *Here Are The Retailers That Have Filed For Bankruptcy Protection In 2017*, CNBC, (Sept. 23, 2017), https://www.cnbc.com/2017/09/23/here-are-the-retailers-that-filed-for-bankruptcy-protection-in-2017.html (listing 19 retailers, including The Limited and other apparel stores BCBG Max Azria, Vanity, Rue21, Gymboree, Cornerstone Apparel,  True Religion Apparel, and Alfred Angelo); *Sears, Mattress Firm, and More: Here Are The Retailers That Went Bankrupt in 2018*, CNBC, https://www.cnbc.com/2018/12/31/here-are-the-retailers-including-sears-that-went-bankrupt-in-2018.html (listing 13 retailers, including apparel stores David's Bridal, Rockport, Nine West, Claire's, and A'gaci).

their brick and mortar stores, despite the decreasing sales in those locations.[16]

## C.   THE PARTIES TO THIS ACTION

While parties-in-interest in this action are scattered throughout the entire country, the majority have one thing in common—they are Delaware entities. Of the four defendants in this case, three are Delaware LLCs while the fourth is a foreign partnership.  Compl. at ¶¶ 12–15. Moreover, plaintiff is not a resident of Florida, but of Missouri.  Compl. at ¶ 6.  But the location of the real parties-in-interest on the plaintiff's side of this case is more complicated.  While only five nominal "parties" appear in the caption of the plaintiff's Complaint, the plaintiff in actuality seeks relief on behalf of a group of 121 unsecured creditors of The Limited that are located across the country.  Compl., Ex. A.  From public information available online from the Delaware and Florida Divisions of Corporations,[17] none of the companies on the list are incorporated in Florida and only two companies of 121 entities have their principal place of business in Florida—Tyco Integrated Security, LLC, a Delaware LLC headquartered in Boca Raton, and Lee Hecht Harrison, LLC, a Delaware LLC headquartered in Maitland. While two Florida governmental authorities are listed as creditors, two Delaware governmental authorities are listed as well, meaning the two states have an equal public interest as creditors. In comparison, ***63 of the unsecured creditors—more than half of the parties-in-interest in this case—are entities incorporated in Delaware***.

Of course, plaintiff, Sun, each one of the 121 unsecured creditors in Exhibit A to the Complaint, and several of the potential witnesses in this case have each already participated in The Limited Bankruptcy pending in the Delaware bankruptcy court.[18] In fact, ***the trust on behalf***

---

[16] Ex. I, *In re LSC Wind Down, LLC, et al.*, No. 17-10124, Disclosure Statement With Respect to Joint Chapter 11 Plan of Liquidation of LSC Wind Down, LLC f/k/a Limited Stores Company, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Doc. 525, filed Aug. 16, 2017) ("Discl. Stmt.") at p. 13.

[17] Available at http://search.sunbiz.org/Inquiry/CorporationSearch/ByName and https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx, respectively. *See* Ex. J, Declaration of M. McCutcheon ("McCutcheon Decl.") at ¶ 4.

[18] At minimum, each of the 121 unsecured creditors, three of the four defendants, and five of the potential witnesses have submitted a proof of claim in The Limited Bankruptcy. *See* McCutcheon Decl. at ¶¶ 3, 5, Exs. 2 and 3, Table of Unsecured Creditor Proofs and Claim and Dates of Receipt, compiled from proofs of claim received by Delaware bankruptcy court *In re*

*of which plaintiff acts in this case has filed 81 other adversary complaints in the Delaware bankruptcy court*, using similar fraudulent conveyance and preference theories.[19]   Accordingly, the Delaware bankruptcy court is already home to similar cases brought on behalf of the same creditors and is well-suited to hear this one. By comparison, this Court comes to this matter with no familiarity with The Limited or the parties to this case.

*D.*     POTENTIAL WITNESSES TO THIS ACTION

Like the parties, the potential witnesses in this case are located throughout the country. Since this dispute is likely to turn on The Limited's board of managers' decision to grant the 2011 Dividend, those present at the December 2011 meeting where that decision was made, including board members, advisors, and company representatives, are likely to be the key witnesses in this case. The table below sets forth the current whereabouts of each of the thirteen participants in the December 2011 board meeting.[20] As is clear from even a cursory review, there is stark nexus between where the key witnesses reside and this Court's venue.

| Participants in December 20, 2011 Special Joint Meeting of the Managing Member of Limited Stores, LLC and Board of Managers of Limited Stores Company, LLC | | | |
|---|---|---|---|
| **Participant** | **Current Whereabouts[21]** | **Distance from Southern District of Florida (mi)** | **Distance from District of Delaware (mi)** |
| Linda Heasley | Quincy, Massachusetts | 1,192 | 345 |
| Mark Brody | Chardon, Ohio | 1,446 | 411 |
| T. Scott King | Delray Beach, Florida | 20 | 1,115 |
| John Buell | Columbus, Ohio | 1,092 | 462 |
| Greg Baker | Fort Myers, Florida | 122 | 1,128 |
| Daniel Spradling | Hermosa Beach, California | 2,681 | 2,723 |

*LSC Wind Down, LLC, et al.*, No. 17-10124. The 121 creditors' proofs of claim were submitted and received by the court in January and February of 2017.
[19] Ex. J, McCutcheon Decl. at ¶ 6, Ex. 4, Docket Report of Adversary Proceedings in *In re LSC Wind Down, LLC, et al.*, No. 17-10124.

[20] *See* Ex. K, Dec. 20, 2011 Minutes of a Special Joint Meeting of the Managing Member of Limited Stores, LLC and Board of Managers of Limited Stores Company, LLC for attendant list.

[21] *See* Ex. J, McCutcheon Decl. at ¶¶ 2–3, Ex. 1.

| Participants in December 20, 2011 Special Joint Meeting of the Managing Member of Limited Stores, LLC and Board of Managers of Limited Stores Company, LLC | | | |
|---|---|---|---|
| **Participant** | **Current Whereabouts[21]** | **Distance from Southern District of Florida (mi)** | **Distance from District of Delaware (mi)** |
| Aaron Wolfe | New York, New York | 1,224 | 123 |
| William Epstein | Los Angeles, California | 2,668 | 2,703 |
| Patrick Ripley | Chicago, Illinois | 1,312 | 751 |
| Stillian Ghaidarov | New York, New York | 1,224 | 123 |
| Rachel Masory | San Francisco, California | 3,049 | 2,865 |
| Jocelyn Hirsch | Chicago, Illinois | 1,312 | 751 |
| Jeremy Liss | Chicago, Illinois | 1,312 | 751 |
| | | **1,435 (avg)** | **1,096 (avg)** |

## APPLICABLE LAW

The Eleventh Circuit has found that "a civil proceeding is 'related to' a [bankruptcy] proceeding if the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Estate of Jackson v. Schron (In re Fundamental Long Term Care, Inc.)*, 873 F.3d 1325, 1336 (11th Cir. 2017)   There can be no question that this case "relates to" The Limited's bankruptcy proceedings. Indeed, here, plaintiff advances two causes of action, under 11 U.S.C. § 544(b) and 550(a) of the Bankruptcy Code respectively, to recover $42 million on behalf of The Limited's estate.   Under such circumstances, courts in this circuit have held that Section 1412, which calls for a two-step analysis focused on judicial efficiency and convenience to the parties, governs the transfer of proceedings "related to bankruptcy." *See Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958, 973 (11th Cir. 2012); *Terry Mfg. Co. v. Steel Law Firm, P.C. (In re Terry Mfg. Co.)*, 323 B.R. 507, 509 (Bankr. M.D. Ala. 2005) ("A majority of courts consider 28 U.S.C. § 1412 to be the 'appropriate authority for transfer of bankruptcy proceedings.'"); *Irwin v. Beloit Corp. (In re Harnischfeger Indus.)*, 246 B.R. 421, 434–35 (Bankr. N.D. Ala. 2000) ("[T]he Court concludes that 28 U.S.C. § 1412 is the applicable statute for

determining whether a transfer of proceedings related to the bankruptcy case is appropriate.").[22] *Estate of Jackson v. Schron (In re Fundamental Long Term Care, Inc.)*, 873 F.3d 1325 (11th Cir. 2017).

In analyzing the first of the two transfer grounds under Section 1412, the "interest of justice or efficiency," this Court should consider the following seven factors:

Economics of estate administration;

Presumption in favor of the "home court"[23];

Judicial efficiency;

Ability to receive a fair trial;

The state's interest in having local controversies decided within its borders, by those familiar with its laws;

Enforceability of any judgment rendered; and

Plaintiff's original choice of forum.

*See Alderwoods Group*, 682 F.3d at 974, n. 26, *citing A.B. Real Estate v. Bruno's, Inc. (In re Bruno's, Inc.)*, 227 B.R. 311, 324–25 and nn. 45–51 (Bankr. N.D. Ala. 1998) (citing additional case law).

In analyzing the second transfer ground under Section 1412, the "convenience of the parties," courts typically review five elements:

Location of plaintiff(s) and defendant(s);

Ease of access to necessary proof;

Convenience of witnesses;

Availability of subpoena power for the unwilling witnesses; and

Expense related to obtaining witnesses.

---

[22] At least one court in this Circuit has held that Section 1412, when read together with general reference orders that district courts have in place to refer bankruptcy matters to bankruptcy courts, allows for the direct transfer of adversary proceedings from one bankruptcy court to another. *See Jim Walter Res., Inc. v. Belcher*, 146 B.R. 1008, 1010 (Bankr. M.D. Fla. 1992).

[23] The "home court" is the court in which the debtor's bankruptcy case is pending—in this case, the Delaware bankruptcy court. *See Irwin*, 246 B.R. at 429, n. 15, *citing* Richard A. Gibson, *Home Court, Outpost Court: Reconciling Bankruptcy Case Control With Venue Flexibility in Proceedings*, 62 AM. BANKR. L.J. 37, 38 (1988).

*See Bruno's*, 227 B.R. 311 at 325 and nn. 52–56 (citing additional case law). Although a transfer should be granted, even if only one of the two bases under 1412 is satisfied, this case can and should be sent to Delaware because it overwhelmingly satisfies both tests.

## ARGUMENT

**I.    A transfer to the Delaware Bankruptcy Court is "in the interest of justice" in this case.**

    *A.    This action belongs in the "home court"—the District of Delaware.*

Both the Second and Fifth Circuits have held that the most important factor for this Court to consider in its change-of-venue analysis is whether transfer would promote the economic and efficient administration of the bankruptcy estate. *In re Manville Foreset Prods. Corp.*, 896 F.2d 1384, 1390 (2nd Cir. 1990); *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1241 (5th Cir. 1979).[24] Here, a transfer to the Delaware bankruptcy court, where The Limited Bankruptcy is currently being administered, will undoubtedly result in a more efficient and economical administration of The Limited estate.

*First*, plaintiff's trust has already commenced 81 other adversary proceedings in the Delaware bankruptcy court, seeking to recover money for the estate from numerous other beneficiaries of alleged preferential and fraudulent transfers.[25] Transferring this related case to the Delaware bankruptcy court will allow for a more consolidated approach to these adversary proceedings, with time (and, therefore, fees and costs) saved by The Limited's estate, as well as this Court. Courts have recognized that "the single most significant circumstance favoring transfer … is the existence of a related action in another district." *Smartmatic USA Corp. v. Dominion Voting Sys. Corp.*, No. 13 Civ. 5349, 2013 U.S. Dist. LEXIS 153727, at *16 (S.D.N.Y. Oct. 22, 2013), *quoting Goggins v. Alliance Capital Mgmt., LP*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003). The existence of these 81 related actions pending in the Delaware bankruptcy court, *not to mention the bankruptcy case itself*, strongly weighs in favor of transfer.

Additionally, in precedent binding on this Court, the Fifth Circuit has recognized that "the heart of a Chapter XI proceeding is working up a financial plan of arrangement acceptable

---

[24] Because the Fifth Circuit's *Commonwealth Oil* opinion was issued in 1979, it is controlling in this Circuit. *See, e.g., Bonner v. Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that all 5th Circuit opinions issued prior to October 1981 are controlling precedent in the 11th Circuit).

[25] Ex. J, McCutcheon Decl. at ¶ 6, Ex. 3.

to all relevant parties" and that bankruptcy proceedings should take place where the relevant parties are present. *Commonwealth Oil*, 596 F.2d 1247. Those relevant parties, including all 121 creditors listed in Exhibit A to the plaintiff's Complaint, are already participating in The Limited Bankruptcy in the Delaware bankruptcy court.[26] It is only natural that plaintiff and the creditors for whom it acts resolve this dispute in Delaware as well.  Indeed, the "paramount consideration" that the Court should encourage a "speedy and economic administration of the bankruptcy case … underlies ***the general rule that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction***."[27] *In re Butcher*, 46 B.R. 109, 112–13 (Bankr. N. D. Ga. 1985), *quoting In re Nixon Machinery Company¸* 27 B.R. 871, 873 (Bankr. E.D. Tenn. 1983). Countless additional courts have recognized this "general rule" that the "home court," *i.e.*, where the underlying bankruptcy is pending, is presumed to be the most efficient locale for the resolution of related proceedings. *See, e.g., In re Manville*, 896 F.2d at 1391 ("[T]he district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy."); *Smartmatic*, 2013 U.S. Dist. LEXIS 153727, at *9; *Terry Mfg.*, 323 B.R. at 509 ("[T]here is a strong presumption in favor of maintaining venue where the bankruptcy case is pending."); *Burns v. Grupo Mex. S.A. de C.V.*, No. 07 Civ. 3496, 2007 U.S. Dist. LEXIS 84514, at *14 (S.D.N.Y. Nov. 16, 2007); *Campbell v. Williams*, No. 14-cv-097, 2015 U.S. Dist. LEXIS 76213, at *9 (S.D. Tex. June 12, 2015).

Because the "home court" is the best and most efficient place to resolve preference claims related to a bankruptcy, numerous courts examining this issue in recent years have *refused* to retain fraudulent transfer or preference cases brought by a bankruptcy trustee from outside their district on their docket and, instead, have sent those cases back to the court where the bankruptcy is pending. *See, e.g., Campbell*, 2015 U.S. Dist. LEXIS 76213; *Giuliano v. CDSI Holding Co.*, No. 13-2776, 2014 U.S. Dist. LEXIS 34611 (E.D. Pa. Mar. 17, 2014); *Smartmatic*, 2013 U.S. Dist. LEXIS 153727; *Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5 (S.D.N.Y. 2002). Defendants respectfully requests that this Court do the same.

---

[26] Ex. J, McCutcheon Decl. at ¶ 5, Ex. 2.

[27] The Delaware bankruptcy court unquestionably has jurisdiction over the claims advanced in this suit under 28 U.S.C. § 1334(b), as the Trustee's causes of action are both grounded in title 11 statutes and thus this is a "civil proceeding[] arising under title 11."

B. _Most of the other "interest of justice" factors weigh in favor of a transfer._

As shown above, the "efficient administration" and "home court presumption" factors together weigh heavily in favor of a transfer of this dispute to Delaware. The third factor—"judicial efficiency"—does as well. In considering the "judicial efficiency," courts give weight to, *inter alia*, "the home court's familiarity with the substantive issues." *Bruno's*, 227 B.R. at 327. *See also Renaissance Cosmetics*, 277 B.R. at 17 (transferring case to home court in part because "the Delaware bankruptcy court is intimately familiar with the parties and the factual history of this case"). As one court has stated, transfer of an adversary proceeding to the home court "serves judicial economy by putting the related matter before the same court handling the bankruptcy." *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953, 958 (8th Cir. 2005). The Delaware bankruptcy court is quite familiar with the facts surrounding The Limited's bankruptcy, as they have been comprehensively catalogued in both The Limited's August 16, 2017 Disclosure Statement[28] and in other filings and evidence presented at the multiple hearings held in Delaware. Accordingly, the Delaware bankruptcy court has a significant head-start in terms of its familiarity with many of the operative facts in this case, and will be able to resolve the remaining issues presented more efficiently.

Another factor to be considered is "[t]he state's interest in having local controversies decided within its borders, by those familiar with its laws." This factor also likely favors the Delaware bankruptcy court, and is, at worst, neutral. The merits of this case are likely to be governed by a combination of federal bankruptcy statutes and a uniform state statute, the Uniform Fraudulent Transfer Act,[29] which has been adopted in both Delaware and Florida, and is commonly the ground for claims in bankruptcy proceedings. *Zazzali v. 1031 Exch. Group (In re DBSI, Inc.)*, 478 B.R. 192, 198 (Bankr. Del. 2012) (observing that "fraudulent transfer claims are routine in bankruptcy cases"). These statutes are not "local" in nature but largely uniform throughout the country. While no local law is involved, however, the home court does still have a special interest in determining this dispute. Where, as here, a plaintiff/trustee is "seeking avoidance of the transfers for the benefit of creditors (who have filed dozens of claims in these cases) all across the country[,] … the forum for the bankruptcy cases … has an interest in

---

[28] Ex. I.

[29] Plaintiff has also admitted that its Uniform Fraudulent Transfer Act claim may be governed by Ohio law, in which case, neither potential venue has a superior interest. Compl. at ¶ 68.

ensuring that the aim of the Bankruptcy Code—the orderly and equitable distribution of the estate to creditors—is met." *Id.* Accordingly, this factor should weigh in favor of transfer.

The "fair trial" and "enforceability of judgment factors" are neutral in this case, as there is no reason to suspect that the parties would not receive a fair trial in either this Court or in Delaware. And, although a judgment is highly unlikely in this case, as the plaintiff's claims have no merit and are time-barred, if a judgment were to be issued from this Court or the Delaware bankruptcy court, it would have little effect on its enforceability.

C.     <u>Plaintiff's Choice of Forum Should be Given Little to No Weight.</u>

Of the seven "interest of justice" factors, four weigh in favor of a transfer and two are neutral. The only factor potentially weighing against a transfer is the final factor—"plaintiff's original choice of forum." However, "[a]though a plaintiff's choice of forum is normally given substantial weight, it is well-established that the existence of a related action pending in the transferee court weighs heavily towards transfer." *Credit Suisse AG v. Appaloosa Inv. Ltd. P'Ship I*, No. 15-cv-3474, 2015 U.S. Dist. LEXIS 120020, at *21 (S.D.N.Y. Sept. 9, 2015). There are numerous adversary proceedings pending in The Limited's bankruptcy (itself a related case) that are being administered by the Delaware bankruptcy court.

Furthermore, plaintiff's choice of forum should ***not*** be given any significant consideration because plaintiff, together with all but a few of the hundred plus creditors on whose behalf it acts, is not a Florida resident. "A plaintiff who chooses a foreign forum substantially undercuts the presumption that his choice is reasonable: 'because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.'" *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983), *quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981). As this Court has previously opined, "where a plaintiff chooses a forum other than the home forum, only minimal deference is required, and it is considerably easier to satisfy the burden of showing that other considerations make transfer proper." *Morrissey v. Subaru of Am., Inc.*, No 1:15-cv-21106-KMM, 2015 U.S. Dist. LEXIS 173401, at *6 (S.D. Fla. Dec. 31, 2015). Plaintiff is a resident of Missouri. The majority of the creditors on whose behalf the plaintiff acts are Delaware entities.[30] Only two of the creditor companies have any ties to Florida, and those creditors are also

---

[30] Ex. J, McCutcheon Decl. at ¶ 4.

Delaware entities.[31] Florida is not the home forum of either the Trustee nor 117 of the 121 creditors involved in this case, and thus its "choice of forum only slightly disfavors transfer, if at all." *Id.* This Court should transfer this case to the Delaware bankruptcy court in the interest of justice under 28 U.S.C. § 1412.

**II.      South Florida is no more convenient for the parties and witnesses than Delaware.**

While the facts and law discussed above—on their own—establish that a transfer to the Delaware bankruptcy court is necessary and in the interest of justice, it nevertheless bears noting that the "convenience of the parties" independently supports transfer as well. The first "convenience" factor to be considered is the location of the parties. As outlined in the background facts above, the majority of the defendants are Delaware entities, and, although their principal place of business is Boca Raton, Florida, they operate globally.[32] As for the plaintiff, it is located in Missouri (closer to Delaware than to South Florida), and has brought this suit on behalf of a majority of creditors who are Delaware based. The plaintiff's decision to bring this action in the Southern District of Florida has no basis in the location of the parties. Delaware, where each of the 121 creditors has already appeared in The Limited Bankruptcy and where the majority of the parties on both sides of this case are incorporated, is the more convenient forum for the parties.

Delaware is likewise the more convenient forum for the witnesses. As the table above indicates, out of thirteen key witnesses in this case, the majority reside far closer to the Delaware bankruptcy court than South Florida. In fact, the potential witnesses in this case reside, on average, 25% closer to Delaware (1,435 miles from this Court, compared to 1,096 miles from the Delaware). Only one potential witness resides within 100 miles of this Court—Mr. Scott King, who is a former employee of Sun Capital and is amenable to appearing in the District of Delaware should he be called to testify at trial there.[33]

This result does not change when one limits the analysis to the three most central witnesses in the case. The three participating members of The Limited Stores Company, LLC's

---

[31] *Id.*

[32] *See, e.g.,* Ex. L, Sun Capital Partners, Inc., https://suncappart.com/about/ (last visited March 18, 2019), stating "Sun Capital Partners, Inc. is a global private equity firm … Since 1995, Sun Capital has invested in more than 365 companies worldwide … Sun Capital has offices in Boca Raton, Los Angeles and New York, and affiliates in London and Shenzhen."

[33] Ex. M, Declaration of T. Scott King, ¶ 4.

Board of Managers—Ms. Linda Heasley, Mr. Mark Brody, and Mr. King—are the only witnesses who voted on the 2011 Dividend, and thus are likely to be the most critical. These witnesses live, on average, 886 miles from this Court but only 624 miles from Delaware bankruptcy court.  Further, since Mr. King is amenable to appearing in Delaware, Ms. Heasley and Mr. Brody, who reside in Massachusetts and Ohio, respectively, far closer to the Delaware than this Court, are the more important witnesses to be considered in a Section 1412 analysis. *See Zazzali*, 478 B.R. at 196 ("The convenience of witnesses is considered only to the extent that witnesses are actually unavailable to testify in one of the venues."). These two witnesses live 70% closer to Delaware, and would be significantly inconvenienced by being called to testify in this Court, which is, on average, more than 1,300 miles from their homes. No matter what group of potential witnesses is considered, Delaware is the more convenient venue for potential witnesses in this case.  Accordingly, the first three factors of the "convenience of the parties" analysis weigh in favor of the Delaware bankruptcy court.

Given that all the necessary documentary proof in this case is likely to be electronically stored, "ease of access to necessary proof" is the same regardless of where this case is situated. Thus, this factor is neutral in the "convenience of the parties" analysis. As opinions over the past few decades have recognized, "[w]ith the advent of xerography and other means of document reproduction, the location of documents is no longer entitled to much weight in the transfer of venue analysis, especially where, as here, the parties have the financial capability to complete the necessary copying." *CBS Interactive, Inc. v. NFL Players Ass'n*, 259 F.R.D. 398, 410 (D. Minn. 2009), *quoting Durabla Mfg. Co. v. Cont'l Cas. Co.*, No. 98-1596, 1998 U.S. Dist. LEXIS 20849, at *11 (D. Minn. Oct. 26, 1998). More recently, this Court has opined that "[i]n a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant … Consequently, the location of relevant documents and the relative ease of access to sources of proof is neutral with respect to whether transfer is justified." *Microspherix LLC v. Biocompatibles, Inc.*, No. 9:11-cv-80813-KMM, 2012 U.S. Dist. LEXIS 8359, at * 10–11 (S. D. Fla. Jan. 25, 2012).

Finally, the factor concerning the availability of subpoena power for unwilling witnesses is similarly neutral, because all but one of the potential witnesses listed above reside more than 100 miles from either court, and the sole witness who falls within this Court's subpoena power,

Mr. King, has affirmed his willingness to appear in Delaware.[34]  Although this case can and should be transferred in the interest of justice alone, the convenience of the parties also supports a transfer to Delaware, with three factors weighing in favor of transfer, with the remaining factors being neutral.

**III.   Given that South Florida is not a more convenient forum than Delaware, the plaintiff's choice to bring its action in this Court appears to be forum-shopping.**

Considering all of the above, it is difficult to understand why the plaintiff has chosen to sue defendants in the Southern District of Florida. The choice is certainly not motivated by any intention to efficiently administer the estate; nor has it been made for convenience. Instead, it appears that the plaintiff chose this Court strategically to gain what it believes to be an advantage from Florida's laws.  "Courts generally do not reward forum shopping." *Credit Suisse*, 2015 U.S. Dist. LEXIS 120020, at *29.  Courts confronted with similar situations involving strategic venue choices made by bankruptcy participants who commence litigation in courts far from where the bankruptcy is being administered, have transferred such suits back to the home court. *See id. See also Renaissance Cosmetics*, 277 B.R. at 20. "Courts should give 'diminishing deference' to a plaintiff's choice of a non-home forum 'to the extent that it was motivated by tactical advantage,' such as forum shopping." *Renaissance Cosmetics*, 277 B.R. at 18, *citing Iragorri v. United Tech. Corp. et al.*, 274 F.3d 65, 72 (2d Cir. 2001). The plaintiff's choice of this Southern District of Florida forum is neither grounded in the efficient administration of The Limited estate nor does it offer any convenience to the parties or witnesses that is not exceeded by the Delaware bankruptcy court. As in *Renaissance Cosmetics*,  the only discernable explanation for choosing this forum "[is] motivated by 'tactical advantage.'" 277 B.R. at 20.  As the facts and law make plain, transfer is appropriate under such circumstances. *Id.*

**IV.   Alternatively, transfer is warranted under 28 U.S.C. § 1404(a).**

Alternatively, were the Court to find that a venue transfer of this case were not governed by 28 U.S.C. § 1412, defendants request a transfer under 28 U.S.C. § 1404(a), the standard venue-transfer statute for civil actions. Aside from the fact that the "interest of justice" and "convenience of parties" standards are disjunctive under Section 1412, the analysis is similar under either statute. *See Chex Sys., Inc. v. DP Bureau, LLC*, No. 8:10-cv-2465-T-33MAP, 2011 U.S. Dist. LEXIS 130392, at *5 n.1 (M.D. Fla. Nov. 10, 2011) ("The determination whether to

---

[34] Ex. M, Declaration of T. Scott King, ¶ 4.

transfer venue under 28 U.S.C. § 1412, however, requires the same analysis as under 28 U.S.C. § 1404(a)"); *Holmes v. Grubman (In re Holmes)*, 306 B.R. 11, 14 (Bankr. M.D. Ga. 2004) ("The statutory language of sections 1404 and 1412 are similar and courts apply the same basic factors when considering motions to transfer under either section."). Accordingly, for the reasons above, a transfer of this case from the Southern District of Florida to the District of Delaware is warranted, whether such transfer is effected pursuant statutory authority given by Section 1412 or Section 1404(a).

## CONCLUSION

The plaintiff has no legitimate reason for commencing litigation closely related to The Limited's bankruptcy in this Court, hundreds of miles away from where The Limited's estate is being administered.  This case belongs in the Delaware bankruptcy court, where a myriad of other adversary proceedings have been filed, where the court has thoroughly reviewed salient facts concerning the underlying causes of The Limited's bankruptcy, where all creditors on whose behalf the plaintiff now seeks relief have already appeared, where the majority of the parties in this case are incorporated, and where it would be more convenient for nearly every potential witness in this case to appear and give testimony.

Dated:  March 18, 2019

**BAKER & McKENZIE LLP**
*Attorneys for Defendants*
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile: (305) 789-8953

By: /s/ Jodi A. Avila_____
Jodi A. Avila
Florida Bar No. 102787
jodi.avila@bakermckenzie.com

**BAKER MCKENZIE, LLP**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Michael A. Duffy
michael.duffy@bakermckenzie.com
(*pro hac vice*)
Michael C. McCutcheon
michael.mccutcheon@bakermckenzie.com
(*pro hac vice*)

17

**CERTIFICATE PURSUANT TO S.D. FLA. L.R. 7.1(a)(3)**

I HEREBY CERTIFY that prior to filing this Motion counsel for Defendants conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in the Motion and has been unable to do so.

By: /s/ Jodi A. Avila_____
    Jodi A. Avila

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 18, 2019, a true and correct copy of the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List.

By: /s/ Jodi A. Avila_____
    Jodi A. Avila

18

## <u>SERVICE LIST</u>

### Case No. 9:19-cv-80074-Rosenberg/Reinhart

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

UMB BANK, N.A., as Plan Trustee of The Limited Creditors' Liquidating Trust,

v.

SUN CAPITAL PARTNERS V, LP; SUN MOD FASHIONS IV, LLC;
SUN MOD FASHIONS V, LLC; and H.I.G. SUN PARTNERS, LLC,

Kenneth Dante Murena, Esq.
Damian & Valori LLP
1000 Brickell Avenue
Suite 1020
Miami, Florida 33131
(305) 371-3960 (Telephone)
(305) 371-3965 (Facsimile)
kmurena@dvllp.com

Eric D. Madden
Gregory S. Schwegmann
Michael Yoder
Reid Collins &Tsai LLP
1601 Elm Street
42nd Floor
Dallas, Texas 75201
(214) 420-8900 (Telephone)
(214) 420-8909 (Facsimile)
emadden@rctlegal.com
gschwegmann@rctlegal.com
myoder@rctlegal.com

*Counsel for UMB Bank N.A., as Plan Trustee*
*of The Limited Creditors' Liquidating Trust*