**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:19-cv-80074-Rosenberg/Reinhart**

**UMB BANK, N.A., as Plan Trustee of The
Limited Creditors' Liquidating Trust,**

      **Plaintiff,**

**v.**

**SUN CAPITAL PARTNERS V, LP,
SUN MOD FASHIONS IV, LLC,
SUN MOD FASHIONS V, LLC, and
H.I.G. SUN PARTNERS, LLC,**

      **Defendants.**

**DEFENDANTS' JOINT RULE 12(b)(6) MOTION TO DISMISS AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Jodi A. Avila (Florida Bar No. 102787)
jodi.avila@bakermckenzie.com
**BAKER & McKENZIE LLP**
*Attorneys for Defendants*
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile: (305) 789-8953

Michael A. Duffy
michael.duffy@bakermckenzie.com
(*pro hac vice*)
Michael C. McCutcheon
michael.mccutcheon@bakermckenzie.com
(*pro hac vice*)
BAKER MCKENZIE, LLP
300 East Randolph Street #5000
Chicago, Illinois 60601
Telephone (312) 861-8000

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 2

    A.    The Limited's Early Growth .................................................................................. 2

    B.    The Limited's Sales Stagnates As L Brands Develops Successful Partner
          Brands ................................................................................................................. 2

    C.    Sun Capital Acquires The Limited From L Brands And Invests $50
          Million ................................................................................................................ 2

    D.    The Press Takes Notice Of The Limited's Turnaround ......................................... 3

    E.    The 2011 Dividend ............................................................................................. 4

    F.    The Limited's Performance After The 2011 Dividend Transaction ..................... 5

    G.    Plaintiff Gains Access To The Company's Books And Records .......................... 5

    H.    Plaintiff's Lawsuit .............................................................................................. 7

CHOICE OF LAW ................................................................................................................ 7

ARGUMENT ........................................................................................................................ 8

I.    The 2011 Dividend Occurred Outside Of Florida's Four Year Statute Of Repose
    For Fraudulent Transfers ........................................................................................... 8

II.    Plaintiff's Action Was Not Brought Within Fufta's One-Year Savings Clause ............... 9

III.    FUFTA's One-Year Savings Clause Cannot Be Equitably Tolled Because It Is A
    Statute Of Repose ................................................................................................... 12

IV.    Even If FUFTA's Period Of Repose Could Be Tolled, The Florida Legislature
    Has Not Authorized Tolling Under The Circumstances Present In This Case ............... 14

CONCLUSION ..................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arrington v. Hausman,*
  16-60532-CIV-MARTINEZ/GOODMAN, 2016 U.S. Dist. LEXIS 162674
  (S.D. Fla. Nov. 21, 2016) ............................................................................................................7

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.,*
  1:17-CV-4928-TWT, 2018 U.S. Dist. LEXIS 121185 (N.D. Ga. July 19,
  2018) ...........................................................................................................................................11

*Bauld v. J. A. Jones Constr. Co.,*
  357 So. 2d 401 (Fla. 1978) ...........................................................................................................9

*Brandt v. Lazard Freres & Co*
  NO. 96-2653-CIV-DAVIS, 1997 U.S. Dist. LEXIS 23705, at *6 (S.D. Fla.
  Aug. 1, 1997). ..............................................................................................................................11

*In re Burton Wiand Receivership Cases,*
  Case Nos. 8:05-cv1856-T-27MSSS .............................................................................................15

*CTS Corp v. Waldburger,*
  573 U.S. 1 (2014) ..........................................................................................................................9

*Diamond Aircraft Indus., Inc. v. Horowitch,*
  107 So. 3d 362 (Fla. 2013) ..........................................................................................................14

*Fla. Masters Packing, Inc. v. Craig,*
  739 So. 2d 1288 (Fla. 4th DCA 1999) .........................................................................................10

*Hess v. Philip Morris USA, Inc.,*
  175 So. 3d 687 (Fla. 2015) ..........................................................................................................12

*Hunt v. American Bank & Trust Co. of Baton Route, La.,*
  783 F.2d 1011 (11th Cir. 1986) ...................................................................................................10

*In re Vitamins Antitrust Litig*
  2008 U.S. Dist. LEXIS 27929 (M.D. Fla. Mar. 26, 2008) ...........................................................15

*Jacobs v. Bank of Am. Corp.,*
  No. 1:15-cv-24585-UU, 2017 U.S. Dist. LEXIS 219773 (S.D. Fla. Mar. 20,
  2017) ..............................................................................................................................................3

*Kephart v. Hadi,*
  932 So. 2d 1086 (Fla. 2006) ...................................................................................................13, 14

*Laddin v. Belden (In re Verilink Corp.),*
    408 B.R.420 (Bankr. N.D. Ala. 2009) ..................................................................13

*Landers v. Milton,*
    370 So. 2d 368 (Fla. 1979)...............................................................................11

*Lozman v. City of Riviera Beach,*
    713 F.3d 1066 (11th Cir. Fla. 2013) .............................................................6, 10

*In re LSC Wind Down, LLC, et al.,*
    No. 17-10124 .......................................................................................................7

*In re LSC Wind Down, LLC, et al.,*
    No. 17-10124, Dkt. 685 (Dec. 20, 2017) ...........................................................6

*McCausland v. Davis,*
    204 So. 2d 334 (Fla. 2nd DCA 1967) ................................................................10

*Mukamal v. Cosmos, Inc. (In re Palm Beach Fin. Partners, L.P.),*
    Nos. 09-36379-BKC-PGH, 11-02970-BKC-PGH-A, 2013 Bankr. LEXIS
    5664 (Bankr. S.D. Fla. July 30, 2013) ...............................................................8

*Nat'l Auto Serv. Ctrs. v. F/R 550, LLC.,*
    192 So. 3d 498 (Fla. Dist. Ct. App. 2016) .................................................*passim*

*United States ex rel. Osheroff v. Humana, Inc.,*
    776 F.3d 805 (11th Cir. 2015) .....................................................................6, 10

*Sabal Chase Homeowners Ass'n v. Walt Disney World Co.,*
    726 So. 2d 796 (Fla. 3d DCA 1999) ..............................................................12, 13

*Sapp v. Warner,*
    105 Fla. 245 (Fla. 1932).....................................................................................10

*Schmidt v. Skolas,*
    770 F.3d 241 (3d Cir. 2014)................................................................................8

*Smith v. Duff and Phelps, Inc.*
    5 F.3d 488 (11th Cir. 1993) ...............................................................................10

*Southeastern Commer. Fin., LLC v. Dominion Bus. Fin., LLC (In re United Tile &*
    *Stone, Inc.),*
    449 F. App'x 901 (11th Cir. 2011) .....................................................................9

*Stewart Coach Industries, Inc. v. Moore,*
    512 F. Supp. 879 (S.D. Ohio 1981) ...................................................................11

*Univ. of Miami v. Bogorff*,
   583 So. 2d 1000 (Fla. 1991) ............................................................................ 9, 12

*USACM Liquidating Trust v. Deloitte & Touche*,
   754 F.3d 645 (9th Cir. 2014) ............................................................................... 13

*Wiand v. Sarasota Opera Ass'n*,
   Case No. 8:10-CV-248-T-17MAP, 2011 U.S. Dist. LEXIS 109203 (M.D. Fla.
   Sept. 26, 2011) .................................................................................................. 15

*Wiand v. Wells Fargo Bank, N.A.*,
   86 F. Supp. 3d 1316 (M.D. Fla. 2015) ............................................................... 10

*Wolf v. Degner*,
   502 N.W.2d 440 (Neb. 1993) ............................................................................. 14

**Statutes**

11 U.S.C. § 544(b) ................................................................................................... 7

11 U.S.C. § 548 ....................................................................................................... 7

11 U.S.C. § 548(a)(1) ............................................................................................... 7

11 U.S.C. § 550(a) ................................................................................................... 7

11 U.S.C. § 108(a) ............................................................................................ 13, 14

Fla. Stat. Ann. § 726.105(1) ............................................................................... 7, 15

Fla. Stat. Ann. § 726.110 ............................................................................... *passim*

Fla. Stat. §95.051 .................................................................................... 14, 15, 16

Florida's Uniform Fraudulent Transfer Act ("FUFTA") ................................... *passim*

**Rules**

Fed. R. Bankr. P. 2004 ............................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ............................................................................ 6, 8, 10, 13

Fed. R. Evid. 201 ............................................................................................... 6, 10

## PRELIMINARY STATEMENT

Plaintiff, the trustee of the bankrupt women's apparel company, The Limited, claims that a $42.2 million dividend paid to Sun Capital in 2011 rendered that company insolvent and forced it to file for bankruptcy protection over *five years later*.[1]  Of course, plaintiff's two-count complaint defies common sense.  The Limited operated and often prospered (in a dismal economic climate) for years after it declared this dividend and could not have done so if the dividend had actually torpedoed the company.  Plaintiff's strained theory of liability is also legally unsustainable.  Indeed, its complaint is untimely in the extreme, since The Limited declared the 2011 dividend *over seven years ago*, well beyond the applicable four-year statute of repose.  In contrast to a statute of limitations, the statute of repose is designed to bar actions filed four years after an allegedly fraudulent transfer occurs and is strictly enforced regardless of when the injury giving rise to the claim is discovered.  Given this important legal distinction, plaintiff can proffer no excuse why it waited so long to challenge a transaction that was widely disclosed (including to creditors) and was the subject of an independent, third-party solvency analysis completed at the time of the dividend in 2011.  Critically, plaintiff has been in possession of company documents revealing each of these facts since December 2017, yet (inexcusably) failed to file its claims within the one-year "savings" clause provided by Florida law.

Ultimately, plaintiff seeks to apply hindsight and lay blame for the demise of The Limited where it does not belong.  As the operating history of that company makes plain, the 2011 dividend did not cause The Limited to fail.  Instead, The Limited suffered the same unfortunate fate countless other brick and mortar retailers have faced (and continue to face) with the rise of e-commerce giants.  These macro-economic factors, and not a single transaction from over five years prior, caused the company to file for bankruptcy on January 17, 2017.  Two years (to the day) after The Limited sought bankruptcy protection, plaintiff filed this lawsuit *well* outside of the 4-year statute of repose under Florida law. FLA. STAT. ANN. § 726.110(1).  The complaint was also filed beyond the statute's one-year savings period because the 2011 dividend

---

[1] Defendants Sun Capital Partners V LP, Sun Mod Fashions IV, LLC, Sun Mod Fashions V, LLC and are all affiliates of the private investment firm Sun Capital Partners, Inc.  HIG Sun Partners, Inc. is an affiliate of the private investment firm, HIG Capital, which, in certain instances, invests with Sun Capital affiliates.  For ease of reference, this brief refers generally to Sun Capital, instead of the specific, separately incorporated, affiliates and co-investment entities which may have participated in a particular transaction.

"could reasonably have been discovered by the claimant" by December 20, 2017 (at the latest). *See* FLA. STAT. ANN. § 726.110(1). For these reasons, and as further explained below, this Court should dismiss plaintiff's complaint with prejudice.

## FACTUAL BACKGROUND

Unless otherwise noted, the following facts, which are assumed to be true only for the purposes of this motion, are taken from plaintiff's Complaint ("Compl.").

### A. *The Limited's Early Growth*

Plaintiff's complaint tells the story of a once-successful retail business that began floundering in the mid-1990s. Compl. at ¶ 26. The Limited, which started as a single store in Ohio in 1963, grew to over 100 stores by 1976. *Id.* at ¶ 19. The company's growth continued and, as The Limited opened more stores, it also acquired more brands, most notably Victoria's Secret, Lane Bryant, Bath & Body Works, and Express, under the "L Brands" umbrella. *Id.* ¶ 20.

### B. *The Limited's Sales Stagnates As L Brands Develops Successful Partner Brands*

The Limited brand stagnated in the early 1990s, while Victoria's Secret and Bath & Body Works flourished. *Id.* at ¶ 22. The Limited's decline in the 1990s was stark, including a $20 million operating loss in 1994 and a staggering $95 million operating loss in 1998. *Id.* at ¶ 22. All the while, The Limited was closing stores at a breakneck pace, decreasing its footprint by 65.7%, from 759 stores in 1992 to 260 stores in 2006. *Id.* at ¶ 23, 24. L Brands' other companies, most notably Victoria's Secret and Bath & Body Works, were thriving and supporting the losses incurred by The Limited. *Id.* at ¶ 22. Indeed, L Brands endured "nearly 15 years of continuous losses" from The Limited. *Id.* In fact, The Limited "only managed to survive as a result of being subsumed within the same corporate enterprise that owned Victoria's Secret and Bath & Body Works." *Id.*

### C. *Sun Capital Acquires The Limited From L Brands And Invests $50 Million*

By July of 2007, The Limited was left with 251 stores and, according to plaintiff, "the successful days of 'The Limited' brand apparel business were squarely in the past." *Id.* at ¶ 25. As a result, L Brands made the decision to sell 75% of The Limited—a 15 year drag on its balance sheet—to an affiliate of Sun Capital. *Id.* at 26. In exchange, Sun Capital invested $50 million in the business. *Id.* at ¶ 27. Meanwhile, L Brands retained a 25% equity interest in The Limited in the event it turned around its performance. *Id.* at ¶ 26.

And it did turn around.  In less than three years, and in the midst of the Great Recession, Sun Capital helped to stop the fifteen year losing streak and returned to L Brands with an offer to purchase the remaining 25% interest in The Limited for $32 million.  *Id*. at ¶¶ 26, 29.  Thus, while L Brands was willing to jettison 75% of its equity in The Limited in 2007 "without receiving anything in exchange," in 2010, three years later, the L Brands 25% equity interest in the company was worth $32 million (indicating a total value of $128 million).  *Id*. at ¶26.

### D.   *The Press Takes Notice Of The Limited's Turnaround*

The press took note of The Limited's recovery.  In 2009, *The Columbus Dispatch* quoted The Limited's CEO, Linda Heasley, who explained that the company had returned to profitability and was planning to double its store footprint.  *See A Renaissance Is Under Way at The Limited, Featuring New Hopes for Growth and Some Cool-Again Fashions*, THE COLUMBUS DISPATCH                                  (Nov.                        29,                        2009), (https://www.dispatch.com/content/stories/business/2009/11/29/LIMITED_HEASLEY.ART_A RT_11-29-09_D1_M4FPV5N.html), attached hereto as Ex. A.[2]  The store remained profitable into 2011, as *The Columbus Monthly* credited The Limited's CEO, Linda Heasley, with leading a turnaround at the company and announcing her plans for growth in stores to 400 or 500 after The Limited's long period of consolidation.  *See* Steve Wartenberg, *The Limited's Comeback*, THE COLUMBUS                  MONTHLY,                  February                  6,                  2014 (https://www.columbusmonthly.com/content/stories/2011/02/the-limited039s-comeback.html), attached hereto as Ex. B.[3]  The article also credited Ms. Heasley with rejuvenating the brand within the 25-35 year-old market of women customers and increasing the company's store count up to 230 stores after falling to 217 at its nadir.  *Id*.

---

[2] "[C]ourts are expressly permitted to consider documents subject to judicial notice, such as news articles, websites, and other publicly available documents, 'for the limited purpose of determining which statements the documents contain (but not for determining the truth of those statements).'"  *Jacobs v. Bank of Am. Corp.*, No. 1:15-cv-24585-UU, 2017 U.S. Dist. LEXIS 219773, at *14-15 (S.D. Fla. Mar. 20, 2017)  Here, defendants offer the statements in the 2009 article not for the truth that The Limited was, in fact, profitable but, instead, to establish that The Limited's CEO Linda Heasley frequently made public statements concerning the Company's performance, which bears on the question of notice to The Limited's creditors.

[3] *See supra* Footnote 2.  The date published online *The Limited's Comeback* is February 6, 2014.  However, both the URL and the dates in the article make clear that it was originally published in the February 2011 issue of The Columbus Monthly.

### E.    *The 2011 Dividend*

Because The Limited was profitable again, it could afford to service higher debt levels while paying returns to its equity sponsor, Sun Capital.  *Id.*; Compl. at ¶ 26.  Despite the CEO's public comments, plaintiff alleges that the company's "management knew that 'The Limited' had no real future."  *Id.* at ¶ 38.  According to plaintiff, around this time The Limited's managers devised a scheme to "scrounge up as much of the company's available cash as possible" to "transfer most of that cash to Sun Capital's affiliates…." *Id.* at ¶ 39.  On December 20, 2011, The Limited's board of managers voted to make a "special distribution" of $42,158,299.47 to an account held in the name of Sun Capital (the "2011 Dividend").  *Id.* at ¶ 40-41.  At the time of the transfer, the Limited had 244 stores, which is 14 more than what Ms. Heasley reported publicly in February of 2011.  *Compare id.* at ¶ 45 *with* Ex. B, *The Limited's Comeback.*

Before issuing the 2011 Dividend, the board retained an independent valuation company, Capstone Valuation Services, LLC ("Capstone"), to offer an opinion as to the propriety of issuing it.  *See* Ex. C, Retention of Capstone.  Capstone was a financial advisory firm engaged in the valuation of businesses in connection with mergers and acquisitions, leveraged buyouts, dividend distributions and private placements, including reviews of solvency and surplus.  Ex. D, Capstone Solvency Opinion at 3.[4]  After an extensive analysis, which included a review of four years of audited financial statements, five years of financial forecasts, as well interviews of key executives, Capstone opined that, following the 2011 Dividend, The Limited would pass the three independent tests of solvency.  *Id.* at 4.  These independent, third party conclusions were presented to the board of The Limited and recorded in the company's minutes (which plaintiff has possessed and controlled since December 20, 2017).  *See* Ex. E, December 20, 2011 Minutes of the Board of Directors of Limited Stores Company, LLC and Limited Stores LLC.  Critically, The Limited kept its lenders (*i.e.,* the largest block of the company's creditors) informed about its internal discussions by making presentations concerning the company's financial projections prior to issuing resolutions to approve the 2011 Dividend, which was ultimately paid on December 21, 2011.  Ex. D, Capstone Solvency Opinion at 2; Ex. E, December 20, 2011 Limited Resolutions.

---

[4] Sun Capital attaches the Capstone Retention Agreement (Ex. C), Capstone Solvency Opinion (Ex. D), and the December 20, 2011 Minutes of The Board of Directors of Limited Stores Company, LLC and Limited Stores LLC (Ex. E) for context only and does not rely on these documents for any argument that plaintiff's complaint should be dismissed.

**F.**    ***The Limited's Performance After The 2011 Dividend Transaction***

Plaintiff alleges that The Limited was rendered insolvent by the 2011 Dividend, although it also concedes that The Limited "limp[ed] along" (which is to say, it operated) for over five years after that transaction.  Compl. at ¶¶ 52, 55.  Plaintiff devotes less than ten paragraphs in its complaint to these ***five years***, and, simply states that The Limited filed for bankruptcy protection on January 17, 2017.  *Id.* at ¶ 57. Critically, by at least January 7, 2017, the press was aware of the 2011 Dividend and wrote articles commenting on it.  Indeed, on that date, Reuters ran a story detailing the distributions Sun Capital received from The Limited prior to the bankruptcy filing, explaining that Sun Capital had told investors in a letter that it has made 1.8 times its $50 million investment in Limited Stores, ***thanks to prior distributions and dividends***."  *Id.  See also* Jessica DiNapoli, *The Limited Owner Almost Doubles Investment, But Closing All Stores*, REUTERS (Jan. 7, 2017, 7:28 PM), (https://www.reuters.com/article/us-suncapital-limitedstores-idUSKBN14R015) (emphasis added), attached hereto as Ex. F; *see also* Dan Primack, PRO RATA, AXIOS (Jan. 9, 2017) (http://link.axios.com/public/8561928) (discussing the Limited's "dividend recap" transaction) , attached hereto as Ex. G.[5]

**G.**    ***Plaintiff Gains Access To The Company's Books And Records***

Plaintiff alleges that "[t]he Predicate Creditors had not discovered and could not have reasonably discovered the existence or the fraudulent nature of the 2011 Dividend *prior to one-year before the Petition Date*."  Compl. at ¶ 67 (emphasis supplied).  Plaintiff further claims, "[s]pecifically, there were no public announcements regarding the Transfer *prior to the filing of the Petition Date [January 17, 2017]*, and the Predicate Creditors *had no access to the company's books and records or any other information that would have disclosed either the existence or the fraudulent nature of the Transfer before January 17, 2016*."  *Id.* (emphasis supplied).  But from facts disclosed in the bankruptcy (of which this Court can and should take notice), plaintiff had the ability, and, in fact, the obligation to investigate and discover the claims it advances today at least 15 months ago.

For example, on December 20, 2017, the Bankruptcy Court for the District of Delaware filed *Findings of Fact, Conclusions of Law and Order Confirming the Second Modified Joint Chapter 11 Plan of Liquidation of LSC Wind Down, LLC f/k/a Limited Stores Company, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, *In re LSC Wind Down,*

---

[5] *See supra* Footnote 2 (offered for purposes of notice).

*LLC, et al.*, No. 17-10124, Dkt. 713, (Dec. 20, 2017), Ex. H.[6]  Paragraph 67 of that document ordered as follows:

> **The Plan Trustee and Plan Trust Agreement.**  UMB Bank, National Association is designated and approved as the Plan Trustee and shall be vested with full legal power, capacity and authority of the Debtors, and shall be directed to administer, collect and liquidate the Plan Trust Assets and to implement the Plan.  The Plan Trust Agreement is hereby approved.

The Plan Trust Agreement was filed at *In re LSC Wind Down, LLC, et al.*, No. 17-10124, Dkt. 685, (Dec. 20, 2017), Ex. I.[7]

Section 3.1 of the Plan Trust Agreement transferred all of The Limited's assets, including its books and records, to the plaintiff on December 20, 2017:

> **Rights, Powers, and Privileges of Trustee Generally.** Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the ***Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.*** In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

Ex. I at 8 (emphasis added).[8]  In Section 3.2 of the Plan Trust Agreement, titled "Powers of the Plan Trustee," plaintiff was given the power to act on behalf of the trust to "investigate any Trust

---

[6] "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) *citing*  Fed. R. Evid. 201; *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. Fla. 2013).

[7] *See supra* Footnote 6.

[8] "Trust Assets" are defined in the Plan Trust Agreement as follows:

> IT IS HEREBY FURTHER COVENANTED AND DECLARED**,** that the Plan Trust Assets and ***all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon*** (collectively, "Trust Assets") are to be held by the Trust  and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, solely for the benefit of the Beneficiaries and for no other party.

*See* Ex. I at pp. 3-4.

Assets, including, but not limited to . . . potential Third Party Claims, review, reconcile, compromise, settle, or object to Claims of any kind, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004." *See* Ex. I at 10. Additionally, plaintiff was given the power to "cause the Trust to review, reconcile, enforce, collect, compromise, settle, or elect not to pursue all Third Party Claims, including, but not limited to . . . all Avoidance Actions." *Id*. Under Section 3.3 of the Plan Trust Agreement, plaintiff was granted "Exclusive Authority to Pursue Third Party Claims" which consisted of the "exclusive right, power, and interest to review, reconcile, enforce, collect, compromise, settle, or elect not to pursue the Third Party Claims." *Id*. at 13. Under Section 3.8 of the Plan Trust Agreement, plaintiff was required to maintain the books and records. *Id*. at 15-16.

### H.    *Plaintiff's Lawsuit*

On January 17, 2019, on the last day allowed by The Limited's plan or reorganization, plaintiff filed its complaint against Sun Capital. Count One of plaintiff's complaint alleges that the 2011 Dividend is avoidable as a fraudulent transfer pursuant to 11 U.S.C. § 544(b) and "other applicable law, including the Uniform Fraudulent Transfer Act as adopted" by Florida. Compl. at ¶ 68; FLA. STAT. ANN. § 726.105(1)(a) (Florida's Uniform Fraudulent Transfer Act ("FUFTA")). Count Two, brought under 11 U.S.C. § 550(a), is derivative and seeks to recover from all defendants that are subsequent recipients of the alleged fraudulent transfer moneys alleged in Count One. Compl. at ¶¶ 69-72. Tellingly, plaintiff does not purport to state a claim under 11 U.S.C. § 548 for fraudulent transfer, presumably because that provision contains an even shorter two-year look back provision and ***no*** savings clause. *See* 11 U.S.C. § 548(a)(1).

## CHOICE OF LAW

For the reasons stated in Sun Capital's concurrently filed Motion to Transfer Venue, this matter should be transferred to the United States Bankruptcy Court for the District of Delaware, which is already presiding over 81 adversary actions, has reviewed hundreds of submissions, conducted several hearings, and issued dozens of orders in The Limited's bankruptcy. *See In re LSC Wind Down, LLC, et al.*, No. 17-10124. In spite of the availability of this "home court" in Delaware, plaintiff has sued defendants in South Florida because it no doubt believes that this Court will apply a more favorable standard in evaluating a 12(b)(6) motion to dismiss based on timeliness grounds. *Compare, Arrington v. Hausman*, 16-60532-CIV-MARTINEZ/GOODMAN,

2016 U.S. Dist. LEXIS 162674, at *8 (S.D. Fla. Nov. 21, 2016) ("[a]t the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations '***only if it appears beyond a doubt*** that Plaintiffs can prove no set of facts that toll the statute.'") (emphasis supplied) (internal citations omitted), *with Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (A statute-of-limitations defense may be raised by a Rule 12(b)(6) motion if the limitations bar is apparent on the face of the complaint).  As made plain in defendant's motion to transfer, plaintiff's effort to forum shop should not be allowed.

Even if the Court denies Sun Capital's Motion to Transfer Venue, this Court should still dismiss plaintiff's complaint with prejudice because it is untimely on its face under Florida law. At the motion to dismiss stage, this "Court must follow Florida's choice of law rules" which "mandate that the Court employ the 'significant relationship' test with respect to statute of limitations issues." *Mukamal v. Cosmos, Inc. (In re Palm Beach Fin. Partners, L.P.)*, Nos. 09-36379-BKC-PGH, 11-02970-BKC-PGH-A, 2013 Bankr. LEXIS 5664, at *37-38 (Bankr. S.D. Fla. July 30, 2013).  "When the choice of law analysis involves a fact-intensive inquiry, as the 'significant relationship' test does, it is generally inappropriate for a court to make a choice of law determination at the motion to dismiss stage."  *Id*. at *38-39.  Accordingly, because this case has been filed in Florida, Florida law should apply in deciding this motion to dismiss in the event the concurrently filed motion to transfer is dismissed.

## ARGUMENT

### I.      The 2011 Dividend Occurred Outside Of Florida's Four Year Statute Of Repose For Fraudulent Transfers

Under the FUFTA, a claim must be brought "within 4 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant."  FLA. STAT. § 726.110(1).  The 2011 Dividend took place on December 20, 2011.  Compl. at ¶ 40-41.  Because this case was filed on January 17, 2019, over seven years after the purportedly fraudulent transfer took place, it is untimely on its face and must be dismissed.  *Nat'l Auto Serv. Ctrs. v. F/R 550, LLC.*, 192 So. 3d 498, 509-10 (Fla. Dist. Ct. App. 2016) (affirming dismissal of fraudulent transfer action as untimely and not subject to equitable tolling).

## II.      Plaintiff's Action Was Not Brought Within FUFTA's One-Year Savings Clause

Knowing that its claims are time-barred, plaintiff strains to salvage its case by invoking the one-year savings clause within the statute of repose, FLA. STAT. § 726.110(1).  Compl. at ¶ 67 ("The Predicate Creditors had not discovered and could not have reasonably discovered the existence or the fraudulent nature of the Transfer prior to one-year before the Petition Date."). Unlike a statute of limitations, a statute of repose is designed to bar actions after a specified period of time has passed from the occurrence of some event regardless of when the injury giving rise to the claim occurred or was discovered.  *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1003 (Fla. 1991); *see also CTS Corp v. Waldburger*, 573 U.S. 1, 9 (2014) ("Statutes of repose generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control … Equitable tolling is applicable to statutes of limitation . . . But a statute of repose is a judgement that defendants should 'be free form liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason.'") Statutes of repose are interpreted more strictly than statutes of limitations because they aim to give certainty and finality to parties.  *Bauld v. J. A. Jones Constr. Co.*, 357 So. 2d 401, 402 (Fla. 1978).  Under applicable Florida law, "the one-year [repose] period begin[s] on the date the *transfer* was or could reasonably have been discovered, not on the date that the *fraudulent nature* of the transfer was or could have been discovered."  *Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 504 (emphasis supplied).

Plaintiff claims that it "had no access to the company's books and records or any other information that would have disclosed either the existence or the fraudulent nature of the Transfer before January 17, 2016."  Compl. at ¶ 67 (emphasis supplied).  As an initial matter, January 17, 2016 is not the relevant date for evaluating whether plaintiff had notice of the dividend for purposes of the savings clause.  Instead, because the complaint was filed on January 17, 2019, if plaintiff had access to the books and records ***before*** January 17, ***2018*** then it had, at least by then, implied actual notice of the claims and this action is outside of the one year savings clause enumerated in FLA. STAT. § 726.110(1).

To be sure, under Florida law, actual notice is "said to be of two kinds: (1) Express, which includes what might be called direct information; and (2) implied, which is said to include notice inferred from the fact that the person had means of knowledge, which it was his duty to use…."  *Southeastern Commer. Fin., LLC v. Dominion Bus. Fin., LLC (In re United Tile & Stone,*

*Inc.*), 449 F. App'x 901, 907-08 (11th Cir. 2011), *quoting Sapp v. Warner*, 105 Fla. 245 (Fla. 1932). Implied actual notice is present when a party has knowledge of enough facts that would cause a prudent person to make further inquiry. *See McCausland v. Davis*, 204 So. 2d 334, 335 (Fla. 2nd DCA 1967). "The principle . . . of alleged implied actual notice is that a person has no right to shut his eyes or ears to avoid information, and then say that he has no notice." *Fla. Masters Packing, Inc. v. Craig*, 739 So. 2d 1288, 1291 (Fla. 4th DCA 1999).

Several courts from within this circuit have found FUFTA claims time-barred where, as here, for one year, a plaintiff had access to information that would have revealed the existence of a transaction with minimal diligence. For example, in *Wiand v. Wells Fargo Bank, N.A.,* 86 F. Supp. 3d 1316 (M.D. Fla. 2015), defendants argued that the receiver had actual knowledge of certain loans at issue when that receiver was appointed in January 2009, and, therefore either knew *or* reasonably should have known that payments had been made on those loans. *Id.* at 1325-26. Because the lawsuit was filed more than three years after the receiver was appointed, the district court held that there had been adequate time for any transfer to "reasonably have been discovered by the claimant" under FLA. STAT. §726.110. *Smith v. Duff and Phelps, Inc.* 5 F.3d 488, 492-493 (11th Cir. 1993) ("The essential limitations question to be settled was 'not when the information was actually known, but rather when in the exercise of due diligence it should have been known'"), *quoting Hunt v. American Bank & Trust Co. of Baton Route, La.*, 783 F.2d 1011, 1014 (11th Cir. 1986) (although receiver, upon appointment, may not be expected to immediately discover fraudulent transactions, "as a matter of law" he "should have been able to turn up information from his own department's files by April 21, 1979 – more than four months after his appointment").

In this case, there can be no debate that plaintiff had access to the company's books and records prior to January 17, 2018. Indeed, by December 20, 2017, through the Plan Trust Agreement entered by the Delaware bankruptcy court, plaintiff was given exclusive access to, and dominion over, The Limited's books and records, including The Limited's board minutes evidencing the 2011 Dividend.[9] *See* Ex. I at 15-16. Accordingly, by the end of 2017, not only did plaintiff possess and control documents that disclosed the 2011 Dividend, it was also

---

[9] This court "may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015) *citing* Fed. R. Evid. 201; *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. Fla. 2013).

affirmatively charged with examining them with an eye towards "investigat[ing] . . . potential Third Party Claims . . .." *Id.* at 10.  Because plaintiff controlled the company's books and records as of December 20, 2017, it reasonably could have (and, indeed, should have) discovered the existence of the 2011 Dividend within one-year thereof, and, as a result, this action should have been filed, at the absolute latest, by December 20, 2018.  Fla. Stat. § 726.110(1).

Moreover, under Florida law, "[a]lthough the movant carries the initial burden of demonstrating that the statute of limitations [or repose, as in this case] has run, the burden shifts to the party seeking to toll the statute of limitations period [or repose] once the moving party has provided competent evidence to invoke a statute of limitations defense." *Brandt v. Lazard Freres & Co.*, L.L.C., CASE NO. 96-2653-CIV-DAVIS, 1997 U.S. Dist. LEXIS 23705, at *6 (S.D. Fla. Aug. 1, 1997) (*citing Landers v. Milton,* 370 So. 2d 368, 370 (Fla. 1979) and dismissing complaint brought under Fla. Stat. § 726.110(1) on statute of limitations grounds). Here, the only allegation in plaintiff's complaint concerning its ability to "discover" the 2011 Dividend transaction is contained in paragraph 67, where plaintiff baldly claims that it "had not discovered and could not have reasonably discovered the existence or the fraudulent nature of the 2011 Dividend prior to one-year before the Petition Date."  Compl. at ¶ 67.  This legal conclusion is deficient on its face because it does not actually plead ***when*** or ***how*** plaintiff discovered the existence of the 2011 Dividend.  Where, as here, plaintiff seeks to toll a deadline, it must plead sufficient facts.  *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 1:17-CV-4928-TWT, 2018 U.S. Dist. LEXIS 121185, at *13 (N.D. Ga. July 19, 2018); *see also Stewart Coach Industries, Inc. v. Moore*, 512 F. Supp. 879 (S.D. Ohio 1981) (Plaintiff must allege date of discovery of fraud where an alleged fraud occurred at remote time, such that it would ordinarily be barred by statute of limitations).

Finally, plaintiff cannot credibly claim that the 2011 Dividend was somehow hidden or obscured.  In addition to being discussed at length in The Limited's board minutes, information about the 2011 Dividend was *publicly* disseminated even before The Limited filed for bankruptcy protection.  Indeed, on January 7, 2017, weeks before the bankruptcy filing, Reuters published a news article detailing the distributions Sun Capital received from The Limited.  *See* Ex. F, *The Limited Owner Almost Doubles Investment, But Closing All Stores.*[10]  In the Reuters article, the author details that "Sun Capital Partners told investors in a letter that it has made 1.8

---

[10] *See supra* Footnote 2.

times its $50 million investment in Limited Stores, ***thanks to prior distributions and dividends***, according to an email to investors seen by Reuters." *Id.* (emphasis added); *see also* Ex. G, PRO RATA, AXIOS (discussing the Limited's "dividend recap" transaction). Given: (1) plaintiff's role as Plan Trustee where it was given control of The Limited's Books and Records; (2) plaintiff's obligation to investigate all potential claims it might bring as the Plan Trustee; and (3) the 2017 public statements concerning the Limited's 2011 Dividend, plaintiff's complaint is untimely.

III.  **FUFTA's One-Year Savings Clause Cannot Be Equitably Tolled Because It Is A Statute of Repose**

Plaintiff cannot escape the one-year savings period in FUFTA by invoking equitable tolling because that provision is a statute of repose which, as a matter of law, cannot be tolled. *Nat'l Auto Serv. Ctrs,* 192 So. 3d at 510.  A statute of limitations "set[s] a time limit within which an action must be filed as measured from the accrual of the cause of action, after which time obtaining relief is barred." *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 695 (Fla. 2015) (internal citations omitted).  On the other hand, a statute of repose eliminates the underlying legal right, "preclud[ing] a right of action after a specified time . . . rather than establishing a time period within which the action must be brought measured from the point in time when the cause of action accrued." *Univ. of Miami*, 583 So. 2d at 1003.  Unlike a statute of limitations, statutes of repose set "an outer limit beyond which [claims] may not be instituted." *Hess*, 175 So. 3d at 695.  Accordingly, statutes of repose establish an absolute bar to the filing of any claim and, after that time has expired, all rights have extinguished.  *See, e.g., Sabal Chase Homeowners Ass'n v. Walt Disney World Co.*, 726 So. 2d 796, 798 (Fla. 3d DCA 1999) (holding that statute of repose was not subject to tolling provision applicable to statute of limitations because, among other reasons, it would "ignore[] fundamental distinctions between ordinary statutes of limitations and statutes of repose").

The Second District Court of Appeal of Florida examined the provisions of the FUFTA, noting that "[o]n its face, section 726.110 is a repose statute, not a limitations statute. The introductory clause of the statute provides that '[a] cause of action with respect to a fraudulent transfer . . . is *extinguished* unless action is brought' within the time periods provided in subsections (1) through (3)." *Nat'l Auto Serv. Ctrs,* 192 So. 3d at 510 (emphasis in original). The court continued, "[t]he unambiguous text thus performs the exact function that distinguishes a statute of repose from a statute of limitations; it extinguishes the cause of action rather than merely barring the remedy."  *Id.* (collecting cases from various states that have similarly

concluded that the uniform provisions present in FUFTA amount to statutes of repose under New Jersey, Pennsylvania, Massachusetts, New Mexico, and Texas law).

Importantly, the *National Auto Services* court specifically examined the one-year savings clause, concluding it, too, was a statute of repose. "When the statute is read in its entirety, it is clear that the savings clause does not create a separate, one-year statute of limitations, but rather creates a limited exception to the four-year period of the statute of repose." *Id.* at 511. Explaining further, the Court noted that the savings clause did not create "a one-year statute of limitations that bars a remedy subject to a four-year repose provision that extinguishes the right" but instead "the savings clause carves out and saves a narrow category of causes of action— those upon which suit is brought within one year of the discovery of the transfer—that would otherwise be barred by the four-year period of repose." *Id.* Finally, the court noted that, "[t]he statute does not require any actual injury or discovery of an actual injury by the plaintiff, it operates to extinguish a claim based on the defendant's action, the transfer. ***The savings clause is part of a single statute of repose.***" *Id.* at 511-12 (emphasis supplied). Because, FUFTA is a statute of repose, its limitations period cannot be "artificially extended" or "tolled" for any reason whatsoever. *Sabal Chase Homeowners Ass'n*, 726 So. 2d at 799. Since FUFTA is a statute of repose that cannot be tolled, and plaintiff was aware of the 2011 Dividend for longer than one year prior to bringing this suit, this case must be dismissed under Rule 12(b)(6).

Finally, this Court should reject any attempt by plaintiff to rely on Section 108(a) of the Bankruptcy Code to toll its claims. In certain circumstances, Section 108(a) can extend the time for filing certain trustee claims, *but only if* the "period within which the *debtor* may commence an action … has not expired before the date of the filing of the [bankruptcy] petition." 11 U.S.C. § 108(a) (emphasis added). The period within which The Limited could have brought a FUFTA action expired in 2015 (four years after the 2011 Dividend), making Section 108(a) inapplicable. *Kephart v. Hadi*, 932 So. 2d 1086, 1091 (Fla. 2006) (observing that when a statute is unambiguous, the court must derive its meaning exclusively "from the words used without involving rules of construction or speculating as to what the legislature intended"); *USACM Liquidating Trust v. Deloitte & Touche*, 754 F.3d 645, 648 (9th Cir. 2014) (dismissing claim brought by liquidating trust on ground that statute of limitations had run against debtor prior to filing bankruptcy petition); *Laddin v. Belden (In re Verilink Corp.)*, 408 B.R.420, 428 (Bankr. N.D. Ala. 2009) ("Plaintiff cannot rely on the discovery rule to toll the statute of limitations in §

108(a)(2) until his appointment on February 13, 2007. While '[a] bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted when the debtor filed for bankruptcy,' the trustee does not acquire any 'rights [or] interests greater than those of the debtor'"), *rev'd on other grounds by Laddin v. Powell Goldstein LLC (In re Verilink Corp.)*, 410 B.R. 697 (N.D. Ala. 2009); *see also, Wolf v. Degner*, 502 N.W.2d 440, 443 (Neb. 1993) ("although § 108(a) extends the time within which a trustee may commence an action on behalf of a debtor in bankruptcy in conjunction with a pending bankruptcy proceeding, § 108(a) does not affect the statute of limitations applicable under state law pertaining to a trustee's action commenced on behalf of creditors to set aside an allegedly fraudulent conveyance"). Moreover, plaintiff cannot rely on FUFTA's saving clause because The Limited inarguably had knowledge of the 2011 Dividend when it was approved by the board and paid. *Nat'l Auto Serv. Ctrs.*, 192 So. 3d at 504.

## IV. Even If FUFTA's Period Of Repose Could Be Tolled, The Florida Legislature Has Not Authorized Tolling Under The Circumstances Present In This Case

Even if the repose periods in FUFTA were subject to tolling (and they are not), the Florida legislature has outlined a specific set of factual circumstances that must be present to toll any limitations period under Florida law. *See* FLA. STAT. §95.051(1). Section 95.051(1), however, does not apply under any circumstance because on its face it pertains only to statutes of limitations, *not* statutes of repose. *Nat'l Auto Serv. Ctrs,* 192 So. 3d at 511.[11] Regardless, Section 95.051 is inapplicable because none of the nine circumstances it contains have been pleaded in plaintiff's complaint. For example, Section 95.051(1) provides as follows:

The running of the time under any **statute of limitations** except ss. 95.281, 95.35, and 95.36 is tolled by:

Absence from the state of the person to be sued.

**(b)** Use by the person to be sued of a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued.

---

[11] The interpretation of a statute begins "with the plain meaning of the actual language" the statute employs. *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013). When a statute is clear and unambiguous, we must derive its meaning exclusively "from the words used without involving rules of construction or speculating as to what the legislature intended." *Kephart*, 932 So. 2d at 1091.

(c) Concealment in the state of the person to be sued so that process cannot be served on him or her.

(d) The adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

(e) Voluntary payments by the alleged father of the child in paternity actions during the time of the payments.

(f) The payment of any part of the principal or interest of any obligation or liability founded on a written instrument.

(g) The pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action.

(h) The period of an intervening bankruptcy tolls the expiration period of a tax certificate under s. 197.482 and any proceeding or process under chapter 197.

(i) The minority or previously adjudicated incapacity of the person entitled to sue during any period of time in which a parent, guardian, or guardian ad litem does not exist, has an interest adverse to the minor or incapacitated person, or is adjudicated to be incapacitated to sue; except with respect to the statute of limitations for a claim for medical malpractice as provided in s. 95.11. In any event, the action must be begun within 7 years after the act, event, or occurrence giving rise to the cause of action.

FLA. STAT. § 95.051(1) (emphasis supplied). Plaintiff has alleged no facts that establish any of the nine circumstances enumerated above apply; nor could it.

Moreover, courts have repeatedly considered and rejected plaintiffs' arguments that equitable tolling should nevertheless apply to FUFTA (or other fraud-based) claims. *See e.g., Wiand v. Sarasota Opera Ass'n*, Case No. 8:10-CV-248-T-17MAP, 2011 U.S. Dist. LEXIS 109203 (M.D. Fla. Sept. 26, 2011) ("*Wiand I*") (dismissing plaintiff's constructive fraud claims brought under the FUFTA because they were time-barred under FLA. STAT. § 726.110 and holding that equitable tolling did not apply in the case because it was not enumerated in FLA. STAT. § 95.051(1)); *see also In re Burton Wiand Receivership Cases*, Case Nos. 8:05-cv-1856-T-27MSSS et al., 2008 U.S. Dist. LEXIS 27929 (M.D. Fla. Mar. 26, 2008) ("*Wiand II*") (receiver's claims under the FUFTA were time-barred to the extent that he sought to recover on transfers made more than four years from the filing of the actions under FLA. STAT. §§ 726.105(1) and 726.110(2) and FLA. STAT. § 95.051 did not apply); *see also In re Vitamins*

*Antitrust Litig.*, Misc. No. 99-197 (TFH), MDL No. 1285, 2000 U.S. Dist. LEXIS 16173 (D.D.C. Oct. 26, 2000) (In the context of Florida Deceptive and Unfair Trade Practices Act complaint, certain claims that fell outside of the four year statute of limitations were dismissed because fraudulent concealment was not included among the tolling provisions recognized in FLA. STAT. § 95.051).

## CONCLUSION

For the reasons stated in this motion and incorporated memorandum, if this Court denies Sun Capital's concurrently filed Motion to Transfer Venue, this Court should grant Sun Capital's motion to dismiss, and enter any other relief it deems just and appropriate under the circumstances.

Dated:  March 18, 2019

**BAKER & McKENZIE LLP**
*Attorneys for Defendants*
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone: (305) 789-8900
Facsimile: (305) 789-8953

By: /s/ Jodi A. Avila
Jodi A. Avila
Florida Bar No. 102787
jodi.avila@bakermckenzie.com

**BAKER MCKENZIE, LLP**
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Michael A. Duffy
michael.duffy@bakermckenzie.com
(*pro hac vice*)
Michael C. McCutcheon
michael.mccutcheon@bakermckenzie.com
(*pro hac vice*)

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 18, 2019, a true and correct copy of the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List.

By: /s/ Jodi A. Avila
Jodi A. Avila

<u>**SERVICE LIST**</u>

**Case No. 9:19-cv-80074-Rosenberg/Reinhart**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UMB BANK, N.A., as Plan Trustee of The Limited Creditors' Liquidating Trust,

v.

SUN CAPITAL PARTNERS V, LP; SUN MOD FASHIONS IV, LLC;
SUN MOD FASHIONS V, LLC; and H.I.G. SUN PARTNERS, LLC,

Kenneth Dante Murena, Esq.
Damian & Valori LLP
1000 Brickell Avenue
Suite 1020
Miami, Florida 33131
(305) 371-3960 (Telephone)
(305) 371-3965 (Facsimile)
kmurena@dvllp.com

Eric D. Madden
Gregory S. Schwegmann
Michael Yoder
Reid Collins &Tsai LLP
1601 Elm Street
42nd Floor
Dallas, Texas 75201
(214) 420-8900 (Telephone)
(214) 420-8909 (Facsimile)
emadden@rctlegal.com
gschwegmann@rctlegal.com
myoder@rctlegal.com

*Counsel for UMB Bank N.A., as Plan Trustee*
*of The Limited Creditors' Liquidating Trust*