**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

_____
                                           :

**UMB BANK, N.A., as Plan Trustee of**    :     **Case No. 9:19-cv-80074**
**The Limited Creditors' Liquidating Trust,**  :
                                           :

     **Plaintiff,**                       :
                                           :

**v.**                                      :     **District Judge Rosenberg**
                                         :     **Magistrate Judge Reinhart**

**SUN CAPITAL PARTNERS V, LP;**      :
**SUN MOD FASHIONS IV, LLC;**       :
**SUN MOD FASHIONS V, LLC; and**   :
**H.I.G. SUN PARTNERS, LLC**       :
                                         :

     **Defendants.**                   :
_____:

---

**PLAINTIFF'S OPPOSITION TO JOINT RULE 12(b)(6) MOTION TO DISMISS
AND MEMORANDUM OF LAW IN SUPPORT**

---

Kenneth Dante Murena             Eric D. Madden (*pro hac vice*)
Florida Bar No. 147486            Michael J. Yoder (*pro hac vice*)
DAMIAN & VALORI LLP         Gregory S. Schwegmann (*pro hac vice*)
1000 Brickell Avenue, Suite 1020    REID COLLINS & TSAI LLP
Miami, Florida 33131            1601 Elm Street, 42nd Floor
T: (305) 371-3960               Dallas, Texas 75201
F: (305) 371-3965               T: (214) 420-8900
                                      F: (214) 420-8909


*Counsel to UMB Bank, National Association, as Plan Trustee of
The Limited Creditors' Liquidating Trust*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT ......................................................................................................................... 5

   A.  THE COMPLAINT IS TIMELY UNDER 11 U.S.C. § 546(a). ...................................... 5

   B.  THE TRUSTEE STEPS INTO THE SHOES OF ANY CREDITOR
       FOR ITS SECTION 544(b)(1) CLAIM. ...................................................................... 6

   C.  NOT ALL CREDITORS WERE TIME-BARRED FROM PURSUING
       FRAUDULENT TRANSFER CLAIMS AS OF THE PETITION DATE. ....................... 7

   D.  THE COURT SHOULD NOT DECIDE AT THIS JUNCTURE THAT
       NOTICE OF THE TRANSFER ALONE TRIGGERS THE ONE-YEAR
       DISCOVERY PERIOD. ............................................................................................ 11

      1.  Ohio Law Cannot Be Excluded as the Applicable Law at the Pleading Stage. ............ 11

      2.  The Florida Supreme Court Would Adopt the Majority Approach and
          Require Discovery of the Fraudulent Nature of the Transfer. ....................................... 14

   E.  REQUEST FOR LEAVE TO AMEND IN THE ALTERNATIVE. ................................ 17

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Bash v. Textron Financial Corp. (In re Fair Fin. Co.)*
  834 F.3d 651 (6th Cir. 2016) ................................................................. 11, 12, 15

*Field v. Starr (In re Maui Indus. Loan & Fin. Co.)*
  454 B.R. 133 (Bankr. D. Haw. 2011) .................................................... 8

*Forman v. Kelly Capital, LLC (In re Nat'l Serv. Indus., Inc.)*
  No. AP 14-50377 (MFW), 2015 WL 3827003 (Bankr. D. Del. June 19, 2015) ...................... 10

*Furr v. I.R.S. (In re Pharmacy Distrib. Servs.), Inc.*
  455 B.R. 817 (Bankr. S.D. Fla. 2011) ................................................... 7

*Grubbs Const. Co. v. Florida Dep't of Rev. (In re Grubbs Const. Co.)*
  321 B.R. 346 (Bankr. M.D. Fla. 2005) ................................................ 8

*In re Palm Beach Fin. Partners, L.P.*
  No. 09-36379-BKC-PGH, 2014 WL 12498025 (Bankr. S.D. Fla. Dec. 10, 2014) ................. 12

*IT Litigation Trust v. D'Aniello (In re IT Grp. Inc.)*
  No. 02-10118, 2005 WL 3050611 (D. Del. Nov. 15, 2005) .................................... 10

*Lubin v. Markowitz (In re Markowitz)*
  No. 14-68061-BEM, 2017 WL 1088273 (Bankr. N.D. Ga. Mar. 22, 2017) ...................... 5, 15

*Menotte v. Gassan (In re Tabor)*
  No. 14-20731-EPK, 2016 WL 3462100 (Bankr. S.D. Fla. June 17, 2016) ........................ 10

*Molinos Valle Del Cibao, C. por A. v. Lama*
  633 F.3d 1330 (11th Cir. 2011) ............................................................. 14

*Moore v. Bay*
  284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931) ......................................... 8

*Mukamal v. Citibank N.A. (In re Kipnis)*
  555 B.R. 877 (Bankr. S.D. Fla. 2016) ............................................. 6

*Mukamal v. Cosmos, Inc. (In re Palm Beach Fin. Partners, L.P.)*
  Nos. 09-36379-BKC-PGH, 11-02970-BKC-PGH-A
  2013 Bankr. LEXIS 5664 (Bankr. S.D. Fla. July 30, 2013) ................................ 12

*Mukamal v. General Electric Capital Corp. (In re Palm Beach Fin. Partners, L.P.)*
  517 B.R. 310 (Bankr. S.D. Fla. 2013) ................................................. 13

ii

*Nat'l Auto Serv. Centers, Inc. v. F/R 550, LLC*
    192 So. 3d 498 (Fla. Dist. Ct. App. 2016)............................................................ 12, 14

*Official Comm. of Unsecured Creditors of Great Lakes Quick Lube LP v. Theisen*
    2018 WI App 70, 384 Wis. 2d 580, 920 N.W.2d 356........................................... 9, 15

*Pharma Supply, Inc. v. Stein*
    No. 14-80374-CIV, 2015 WL 11422321 (S.D. Fla. Apr. 27, 2015) ........................ 13

*Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*
    445 B.R. 206 (Bankr. S.D.N.Y. 2011) .................................................................. 10

*Post-Confirmation Comm. for Small Loans, Inc. v. Martin*
    No. 1:13-CV-195 (WLS), 2016 WL 1274127 (M.D. Ga. Mar. 31, 2016)................. 9

*Soifer v. Bozarth (In re Lydia Cladek, Inc.)*
    494 B.R. 555 (Bankr. M.D. Fla. 2013)................................................................... 7

*Speaker v. U.S. Dept. of Health and Human Servs. Ctrs. for Disease Control and Prevention*
    623 F.3d 1371 (11th Cir. 2010).............................................................................. 5

*Steinberg ex rel. Lancer Mgmt. Grp. LLC v. Alpha Fifth Grp.*
    No. 04-60899-CIV-MARRA, 2010 WL 1332844 (S.D. Fla. Mar. 30, 2010).......... 13

*Steinberg v. A Analyst Ltd.*
    No. 04-60898-CIV, 2009 WL 806780 (S.D. Fla. Mar. 26, 2009)........................... 13

*Ulloa v. CMI, Inc.*
    133 So. 3d 914 (Fla. 2013)................................................................................... 15

*Valentine v. Hayes*
    102 Fla. 157, 135 So. 538 (1931).......................................................................... 15

*Westgate Vacation Villas, Ltd. v. Tabas (In re Int'l Pharmacy & Disc. II, Inc.)*
    443 F.3d 767 (11th Cir. 2005)................................................................................ 6

**Statutes**

11 U.S.C.A. § 544(b)(1)............................................................................................. 6

11 U.S.C.A. § 546(a) ................................................................................................. 5

Fla. Stat. Ann. § 726.110 ...................................................................................... 8, 12

Fla. Stat. Ann. § 726.112........................................................................................ 16

Ohio Rev. Code Ann. § 1336.09 ........................................................................... 8, 12

**Other Authorities**

Becky Yerak
  *ShopKo Dividends Paid Out Before Bankruptcy Are Under Investigation*
  WALL ST. J., Feb. 28, 2019 .......................................................................................... 3

Peter Whorisky
  *As a Grocery Chain Is Dismantled, Investors Recover Their Money. Worker Pensions Are
  Short Millions*, WASH. POST, Dec. 28, 2018 ............................................................... 3

Wolf Richter
  *Another Retail Chain Bought and Stripped Bare by Sun Capital Goes Bankrupt*
  WOLF ST. REPORT, Jan. 17, 2019 ................................................................................ 3

Plaintiff, UMB Bank, National Association (the "Trustee"),[1] in its capacity as the Plan Trustee of the Limited Creditors' Liquidating Trust (the "Trust"), submits this response to the Rule 12(b)(6) Motion to Dismiss (the "Motion") filed by Defendants Sun Capital Partners V, LP, Sun Mod Fashions IV, LLC, Sun Mod Fashions V, LLC, and H.I.G. Sun Partners, LLC (collectively, the "Defendants") and respectfully states as follows.

## **INTRODUCTION**

The Motion misstates the applicable substantive law and disregards the relevant procedural rules. Defendants move for dismissal under Rule 12(b)(6) solely on the ground of the affirmative defense of limitations but argue "facts" not found within the four corners of the Complaint. The Motion then compounds this procedural error by applying the wrong legal framework to the alleged facts. For example, the Motion relies upon the wrong federal statute (11 U.S.C. § 108 instead of 11 U.S.C. § 546(a)) and analyzes the wrong "who" and "when" under the applicable state law incorporated into the Trustee's 11 U.S.C. § 544(b)(1) claim to argue that the claim is untimely.

Put simply, the Motion manifests a fundamental misunderstanding of fraudulent transfer claims brought under section 544(b)(1) and related issues concerning the statute of limitations. Section 544(b)(1) is a federally created cause of action that permits a bankruptcy trustee to step into the shoes of *any* creditor of the debtor. If there is even a single creditor who could have brought a claim to avoid a fraudulent transfer as of the bankruptcy petition date under other applicable law, then section 544(b)(1) allows the trustee to step into that creditor's shoes and avoid the transfer for the benefit of the estate. Thus, so long as a section 544(b)(1) claim is brought

---

[1] All capitalized terms not otherwise defined herein should be attributed the meaning given to them in the Original Complaint (the "Complaint"). *See* Docket No. 1.

1

within two years of the petition date (as required by section 546(a)), limitations analysis for the section 544(b)(1) claim depends on the creditors' avoidance rights as of the petition date.  In other words, a section 544(b)(1) claim is only time-barred if *every single creditor* who could serve as a predicate creditor would have been barred from bringing a claim to avoid a fraudulent transfer as of the petition date. Defendants have failed to make such a showing.

Here, the petition date was January 17, 2017, making it the starting point for the statute of limitations analysis (because the Complaint was indisputably filed within two years of the petition as required by section 546(a)).  The other applicable law for purposes of the Trustee's section 544(b)(1) claim is the Uniform Fraudulent Transfer Act (UFTA), which provides for a 1-year discovery period (or "savings clause" as dubbed by Defendants).  Thus, the Trustee's section 544(b)(1) claim would not be time-barred unless the UFTA's 1-year discovery rule was triggered against *every single creditor* by January 17, 2016.  In short, because the Complaint expressly alleges the opposite, Defendants' arguments for dismissal on limitations grounds fail. Thus, the Motion should be denied in its entirety.

## FACTUAL BACKGROUND

Defendants go far beyond the Complaint, attaching self-serving materials that are unrelated to the narrow limitations defense raised in the Motion to provide "context."[2]  (Motion at 4 n.4). Of course, this self-serving "context" ignores Sun Capital Partners, Inc.'s (the private equity firm

---

[2] The Trustee anticipates that discovery from Sun Capital (defined below), and the officers which Sun Capital appointed to run the Debtors, will demonstrate that the erroneous management projections on which Capstone's opinion relied were not only false but were intentionally and fraudulently so.  Those projections amounted to a magic "hockey stick" that ignored historical trends over the previous two decades, ignored the ongoing shift from brick-and-mortar stores to online retailers that was well underway by 2011, and proved to be wildly inaccurate compared to what actually occurred from 2012 through 2016.  In any event, a motion to dismiss brought solely on an affirmative limitations defense is not the appropriate time to resolve fact issues surrounding grossly inflated financial projections that Sun Capital used to justify its stripping the Debtors of all value.

that either owned or controlled each Defendant, and together with Defendants, "Sun Capital")
notoriety for vulture capitalism in the retail space like that which occurred here.[3]  The Motion also
pontificates on issues unrelated to the lone basis asserted for dismissal, seeking to put a positive
spin on Sun Capital's extraction of a windfall at the expense of the Debtors and their many
creditors.  The Court should ignore these tangents. The facts relevant to the Motion are far narrower
in scope.

      The Trustee is the bankruptcy plan representative of the claims, including Chapter 5 claims,
of the bankruptcy estate of various Debtors that owned or operated a women's apparel brand, The
Limited.  (Complaint ¶¶ 6-11).  The Limited peaked in the late 1980s, and then went into a 15-
year downward spiral of continuous losses and store closings beginning in the 1990s.  (*Id.* ¶¶ 21-
25).  Sun Capital effectively acquired a 100% interest in the Debtors and The Limited business by
mid-2010 after parking $50 million as a capital contribution in 2007 and then taking that money
back out through a distribution only a few years later.  (*Id.* ¶¶ 1, 3, 27-31 & 34).  By June 2010,
"Sun Capital effectively had no skin in the game" yet still maintained 100% ownership of the
Debtors.  (*Id.* ¶ 30).

      By 2011, Sun Capital knew that The Limited had no real future due to its dismal past and
the evolving marketplace where retail shoppers were leaving brick-and-mortar stores in droves in

---

[3] Sun Capital is notorious for loading up its portfolio companies with debt, stripping them of cash through
dividend payments, and then dumping them into bankruptcy.  *See, e.g.*, Peter Whorisky, *As a Grocery Chain
Is Dismantled, Investors Recover Their Money. Worker Pensions Are Short Millions*, WASH. POST, Dec.
28, 2018 ("For Sun Capital, this process of buying companies, seeking profits and leaving pensions unpaid
is a familiar one. Over the past 10 years, it has taken five companies into bankruptcy while leaving behind
debts of about $280 million owed to employee pensions."); Wolf Richter, *Another Retail Chain Bought and
Stripped Bare by Sun Capital Goes Bankrupt*, WOLF ST. REPORT, Jan. 17, 2019 (explaining how Sun
Capital put five retail chains into bankruptcy within a two-year period after stripping them of assets); *see
also* Becky Yerak, *ShopKo Dividends Paid Out Before Bankruptcy Are Under Investigation*, WALL ST. J.,
Feb. 28, 2019 ("More than $170 million in dividends that bankruptcy retailer ShopKo paid to private-equity
firm Sun Capital . . . since 2005 are being investigated by a special committee in the chapter 11
proceedings.").

favor of online retailers.  (*Id.* ¶¶ 34-38).  Thus, Sun Capital and its hand-picked management at the Debtors developed a scheme to suck all value of the company by scrounging up available cash and borrowing as much as possible to make a $42 million transfer to Sun Capital.  (*Id.* ¶¶ 39-43).  This $42 million transfer (the "Transfer") was made on December 20, 2011, and it is the subject of this fraudulent transfer action.  (*Id.* ¶ 59).

The Transfer rendered the Debtors insolvent and doomed them to failure (*Id.* ¶¶ 44-57), and the Debtors received absolutely nothing in exchange.  (*Id.* ¶ 64).  Ultimately, the Debtors filed for bankruptcy on January 17, 2017, at which time the Debtors had hundreds of creditors who asserted over $150 million in general unsecured claims against the Debtors.  (*Id.* ¶¶ 56-57).  These creditors include service providers and vendors, clothing manufacturers, shopping malls, local municipalities, and state taxing authorities who were left holding an empty bag after Sun Capital enriched itself.  (*Id.* ¶ 57).  The Trustee stands in the shoes of one or more of these many unsecured creditors, including those identified in Exhibit "A" to the Complaint, for purposes of its fraudulent transfer claim under 11 U.S.C. § 544(b)(1).  (*Id.* ¶ 66).

The Transfer was made on December 20, 2011—more than four years prior to the bankruptcy filing on January 17, 2017.  The Debtors would have filed for bankruptcy within four years of the Transfer if not for seven different amendments to loan documents beginning in March 2015 to relax financial covenants and to extend the maturity date.  (*Id.* ¶ 56).  Nevertheless, the Trustee seeks to avoid the Transfer as an actual-intent fraudulent transfer because, for the reasons set forth herein, such claims are timely.  (*Id.* ¶¶ 58-68).

In seeking to avoid the Transfer under section 544(b)(1), the Trustee relies on the UFTA "as adopted by Ohio . . . and/or by Florida" as the other "applicable law."  (*Id.* ¶ 68).  The Trustee steps into the shoes of the unsecured creditors identified in Exhibit "A" to the Complaint (*Id.* ¶

66), and specifically alleges that those creditors "had not discovered and could not have reasonably discovered the existence or the fraudulent nature of the Transfer prior to one year before the Petition Date" because "there were no public announcements" and the creditors "had no access to the company's books and records or any other information that would have disclosed either the existence or the fraudulent nature of the Transfer before January 17, 2016." (*Id.* ¶ 67).

## LEGAL STANDARD

"In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Lubin v. Markowitz (In re Markowitz)*, No. 14-68061-BEM, 2017 WL 1088273, at *3 (Bankr. N.D. Ga. Mar. 22, 2017) (quoting *Speaker v. U.S. Dept. of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)). "[D]ismissal pursuant to Fed. R. Civ. P. 12(b)(6) based on the statute of limitations is appropriate only if it is apparent from the face of the complaint that the claim is time-barred because a statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *Id.* (quotations and citation omitted).

## ARGUMENT

**A.     THE COMPLAINT IS TIMELY UNDER 11 U.S.C. § 546(a).**

The Trustee's actual-intent fraudulent transfer claim under 11 U.S.C. § 544(b)(1) is timely. Section 544(b)(1) claims may be brought within two years from the bankruptcy petition date under 11 U.S.C. § 546(a). *See* 11 U.S.C. § 546(a). The petition date was January 17, 2017, and the Complaint was filed on January 17, 2019. Thus, the Complaint was timely filed under section

546(a).  The Trustee is not relying on any "tolling" doctrines for its claims to be timely, and what the Trustee knew, and when it knew it, is irrelevant to the statute of limitations analysis.[4]

## B.    THE TRUSTEE STEPS INTO THE SHOES OF ANY CREDITOR FOR ITS SECTION 544(b)(1) CLAIM.

The date of the Transfer is only germane to the issue of whether any creditor could have avoided the Transfer under any applicable law, such as the UFTA, as of ***the petition date***.  This is because the Trustee steps into the shoes of any creditor for purposes of its section 544(b)(1) claim.  *See, e.g.*, *Westgate Vacation Villas, Ltd. v. Tabas (In re Int'l Pharmacy & Disc. II, Inc.)*, 443 F.3d 767, 770 (11th Cir. 2005) ("Under 11 U.S.C. § 544(b), a trustee in bankruptcy may 'step into the shoes' of an unsecured creditor and void a transfer of an interest in the debtor's property that the unsecured creditor would have the power to void under federal or state law."); *Mukamal v. Citibank N.A. (In re Kipnis)*, 555 B.R. 877, 881 (Bankr. S.D. Fla. 2016) (trustee stepping into shoes of IRS for section 544(b)(1) claim); *see also* 11 U.S.C. § 544(b)(1) ("[T]he trustee may avoid any transfer . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable.").  Thus, it is the creditor's ability to avoid the Transfer as of the petition date, not the Trustee's, that matters.

The Motion misapprehends this basic point of a section 544(b)(1) claim and consequently, misstates the appropriate limitations framework.  First, the Motion misstates the relevant standard

---

[4] The Motion discusses tolling under 11 U.S.C. § 108, which pertains to the tolling of pre-petition debtor claims that become property of the bankruptcy estate under 11 U.S.C. § 541.  But the Trustee's section 544(b)(1) claim is not a debtor claim subject to section 108.  Rather, a section 544(b)(1) claim is a distinct cause of action in which the Trustee steps into the shoes of a creditor (not the debtor) and which is subject to 11 U.S.C. § 546. Furthermore, the Trustee also does need not to rely on any state law tolling doctrines here.

by wrongly focusing on notice to the Trustee, instead of the creditors.[5]   Second, the Motion erroneously assumes that one year prior to the filing of the Complaint is the relevant date for purposes of analyzing timeliness under the UFTA discovery rule.   The proper inquiry here, however, is whether any predicate creditor could have avoided the Transfer *as of the petition date*. Put simply, the Motion is directed at the wrong "who" and the wrong "when."   Its errant framing of the relevant limitations issue "flies in the face of overwhelming case law holding that section 546 extends the time to pursue an avoidance action under section 544 so long as the underlying state law claim had not expired as of the date the bankruptcy case was filed."   *Furr v. I.R.S. (In re Pharmacy Distrib. Servs., Inc.)*, 455 B.R. 817, 823–24 (Bankr. S.D. Fla. 2011) (gathering cases); *see also, e.g.*, *Soifer v. Bozarth (In re Lydia Cladek, Inc.)*, 494 B.R. 555, 560 (Bankr. M.D. Fla. 2013) ("Most courts have held that § 546(a) thus allows a trustee two years from the entry of the order for relief within which to file a fraudulent transfer avoidance action under state law pursuant to § 544, so long as the state law statute of limitations has not expired as of the commencement of the bankruptcy case.").

## C.   NOT ALL CREDITORS WERE TIME-BARRED FROM PURSUING FRAUDULENT TRANSFER CLAIMS AS OF THE PETITION DATE.

Because the Trustee can step into the shoes of any creditor, the Trustee can avoid the Transfer provided that at least one creditor could have done so as of the petition date (January 17,

---

[5] For this reason, the Motion's reliance on authorities dealing with receivers is misplaced.  The Trustee here steps into the shoes of any creditor under section 544(b)(1).  Receivers and other representatives outside of the bankruptcy setting have no comparable right.

2017) under the UFTA.[6]  The UFTA provides, in pertinent part, that "[a] cause of action with respect to a fraudulent transfer . . . is extinguished unless action is brought . . . within 1 year after the transfer . . . was or could reasonably have been discovered by the claimant."  OHIO REV. CODE ANN. § 1336.09; FLA. STAT. ANN. § 726.110.  This discovery rule—or "savings clause," according to the Motion—means that the relevant inquiry is what *creditors* knew or reasonably should have known one year prior to the petition date—January 17, 2016.  If there is a single creditor against whom the 1-year period was not triggered until after that date, then that creditor could have avoided the Transfer as of the petition date (January 17, 2017).  Thus, under section 544(b)(1), so can the Trustee.

Because "section 544(b) of the Bankruptcy Code puts the trustee in the shoes of each individual creditor who could have avoided the transfers under state law," the "period for the trustee began to run when the *last* creditor could reasonably have discovered the fraudulent nature of a particular transfer."[7]  Thus, Defendants are not entitled to a dismissal unless the facts alleged

---

[6] The size of an individual predicate creditor's claim does not matter.  *See Grubbs Constr. Co. v. Florida Dep't of Rev. (In re Grubbs Constr. Co.)*, 321 B.R. 346, 351 (Bankr. M.D. Fla. 2005) ("[O]nce it is established that there exists a single creditor holding an unsecured claim in any amount that could have asserted a fraudulent conveyance action, then there is no quantitative limit to the claim that may be asserted by the trustee standing in the shoes of and asserting the rights of that single creditor.") (citing *Moore v. Bay*, 284 U.S. 4 (1931)).

[7] *Field v. Starr (In re Maui Indus. Loan & Fin. Co.)*, 454 B.R. 133, 138 (Bankr. D. Haw. 2011) (emphasis in original).

8

within the four corners of the Complaint establish that the discovery rule was triggered against

*every single creditor prior to January 17, 2016.*[8]

The Motion does not even attempt to argue that every single unsecured creditor was on

notice of the Transfer prior to January 17, 2016.  Indeed, the Motion does not point to even a single

fact prior to that date that would have put even a single creditor on notice of the Transfer.  Nor

does the Motion point to any facts that would conclusively establish—at the pleading stage—that

all potential predicate creditors reasonably could have discovered the Transfer before January 17,

2016.  The Motion should be denied on that basis alone, and Defendants should not be permitted

to have a second bite at the apple by reframing the limitations analysis anew in their reply brief.

Even if the Court were to delve into issues that could have been raised in the Motion (but

were not), Defendants would still not be entitled to dismissal.  The four corners of the Complaint

do not establish that every creditor had requisite notice of the Transfer prior to January 17, 2016.

Instead, the Complaint specifically alleges the opposite:  "The Predicate Creditors had not

discovered and could not have reasonably discovered the existence, or the fraudulent nature, of the

Transfer prior to one-year before the Petition Date" because "there were no public announcements"

and "the Predicate Creditors had no access to the company's books and records or any other

information that would have disclosed either the existence or the fraudulent nature of the Transfer

before January 17, 2016."  (Complaint ¶ 67).  Moreover, the Debtors were 100% privately held by

---

[8] *See, e.g., Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS), 2016 WL 1274127, at *8 (M.D. Ga. Mar. 31, 2016) (The "Court must take into consideration whether all creditors of the Debtors were able to reasonably discover the alleged fraudulent nature" of the transfers."); *see also Official Comm. of Unsecured Creditors of Great Lakes Quick Lube LP v. Theisen*, 920 N.W.2d 356, 371 (Wis. Ct. App. 2018) ("Under bankruptcy law, the existence of a single, 'triggering creditor' with a timely state law claim gives standing…to pursue claims.  In this case, creditors' [UFTA] claims are time barred only if they could reasonably have discovered the fraudulent nature of the transfer prior to April 2, 2011.  The [defendants] have not shown that this is true as to each creditor—in other words, that every creditor could reasonably have discovered the nature of the transfer by that time and *every creditor's* claim has expired.").

9

Defendants at the time of the Transfer (*Id.* ¶¶ 29-33), and there is no basis for concluding that all of the Debtors' many unsecured creditors—many of whom were trade creditors—had any access to the Debtors' internal books and records or some other reasonable means of learning of the Transfer.  (*Id.* ¶ 57).

These allegations are more than sufficient to preclude dismissal at the pleading stage on the intensely factual issue of what the Debtors' creditors reasonably should have known and when. *See, e.g.*, *Forman v. Kelly Capital, LLC (In re Nat'l Serv. Indus., Inc.)*, No. AP 14-50377 (MFW), 2015 WL 3827003, at *8 (Bankr. D. Del. June 19, 2015) (denying motion to dismiss where "the Debtor was not a public company [and] its board resolutions and financial records were not available to creditors" because such facts are "suggestive of the difficulty of reasonable discovery by a creditor"); *Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206, 234 (Bankr. S.D.N.Y. 2011) (pleading sufficient where trustee alleged "that 'at all times relevant to the Transfers, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS'").  Indeed, "[t]he determination of when a particular triggering creditor could reasonably have discovered a fraudulent transfer is a factual issue that may require consideration of various evidence," and thus generally, "[i]t is not appropriate for the Court to determine this issue at the motion to dismiss stage."  *Menotte v. Gassan (In re Tabor)*, No. 14-20731-EPK, 2016 WL 3462100, at *4 (Bankr. S.D. Fla. June 17, 2016); *see also IT Litigation Trust v. D'Aniello (In re IT Grp. Inc.)*, No. 02-10118, 2005 WL 3050611, at *16 (D. Del. Nov. 15, 2005) (finding that "factual issue concerning when the payments were or could reasonably have been discovered" precluded dismissal "at the pleading stage" on actual fraudulent transfer claim).  Accordingly, the Motion should be denied.

**D.      THE COURT SHOULD NOT DECIDE AT THIS JUNCTURE THAT NOTICE OF THE TRANSFER ALONE TRIGGERS THE ONE-YEAR DISCOVERY PERIOD.**

The Motion should be denied because Defendants cannot establish that every creditor reasonably could have discovered the existence of the Transfer prior to January 17, 2016, much less the *fraudulent nature* of the Transfer.  The UFTA discovery rule—as adopted in a majority of jurisdictions—requires discovery of both the existence and fraudulent nature of a transfer before the clock starts running on a creditor's claim.  The Motion should be denied because the Trustee would win under either standard.  But even if the distinction between (1) discovery of the transfer alone or (2) discovery of the fraudulent nature of the transfer makes a difference, it is entirely premature to find the latter standard inapplicable at the pleadings stage.  Any such determination would require a fact-intensive choice of law decision that is inappropriate on a motion to dismiss and/or involves an *Erie* question that the Motion failed to raise or brief.

**1.      Ohio Law Cannot Be Excluded as the Applicable Law at the Pleading Stage.**

The Trustee's complaint specifically identifies Ohio law as other applicable law for the Trustee's section 544(b) claim, and thus the Trustee is entitled to rely on Ohio law at the pleading stage.  Under Ohio law, as recently predicted by the U.S. Court of Appeals for the Sixth Circuit, the UFTA "discovery rule begins to run at the point when a plaintiff discovers or, in the exercise of reasonable care, could have discovered the transfer and its fraudulent nature." *Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 670–74 (6th Cir. 2016).  That standard should apply

to the Motion because any choice of law determination at this stage of the case would be intensely factual and premature.[9]

The applicable choice of law for actual fraudulent transfers is the "significant relationships" test under the Restatement (Second) Conflict of Laws §§ 6 and 145. *See In re Palm Beach Fin. Partners, L.P.*, No. 09-36379-BKC-PGH, 2014 WL 12498025, at *8-12 (Bankr. S.D. Fla. Dec. 10, 2014). As the Motion concedes, when "choice of law involves a fact-intensive inquiry, as the 'significant relationship' test does, it is generally inappropriate for a court to make a choice of law determination at the motion to dismiss stage." (Motion at 8) (quoting *Mukamal v. Cosmos, Inc. (In re Palm Beach Fin. Partners, L.P.)*, Nos. 09-36379, 11-02970, 2013 Bankr. LEXIS 5664, at *38-39 (Bankr. S.D. Fla. July 30, 2013)). Yet the Motion flips this point on its head by assuming that the incongruity of conducting a fact-intensive choice of law analysis on a Rule 12(b)(6) motion means that Florida law automatically applies.

Indeed, the Motion's presumption that Florida law necessarily applies—to the exclusion of Ohio law—is itself an inappropriate choice of Florida law. But when presented with Rule 12(b)(6) motions involving premature choice of law issues, courts do "not engage in a choice of law analysis at this stage in the proceedings in order to determine which state's statute of limitations applies." *Mukamal v. General Elec. Capital Corp. (In re Palm Beach Fin. Partners, L.P.)*, 517 B.R. 310,

---

[9] Both Ohio and Florida have adopted the UFTA, and the pertinent language in the statute of limitations for actual fraudulent transfers claims is the same. *See* OHIO REV. CODE ANN. § 1336.09; FLA. STAT. ANN. § 726.110. Although neither the Ohio Supreme Court or Florida Supreme Court has ruled on the issue, there is a possible split of authority about whether running of the discovery rule requires discovery of: (a) both the existence and the fraudulent nature of the transfer; or (b) merely the existence of the transfer. *Compare Bash*, 834 F.3d at 670-74; *with Nat'l Auto Serv. Centers, Inc. v. F/R 550, LLC*, 192 So. 3d 498, 504 (Fla. Dist. Ct. App. 2016) ("We conclude that the plain language of that clause requires that the one-year period begin on the date the transfer was or could reasonably have been discovered, not on the date that the fraudulent nature of the transfer was or could have been discovered."). This at least conceivably raises a choice of law issue, although the required *Erie* prediction should be that the Florida Supreme Court would require discovery of the fraudulent nature of the transfer like most other states.

12

323–24 (Bankr. S.D. Fla. 2013).  Rather, a complaint "need only properly allege a claim for relief under *any* potentially applicable state law in order to survive" a motion to dismiss.  *Id.* at 324 (emphasis original); *accord Pharma Supply, Inc. v. Stein*, No. 14-80374-CIV, 2015 WL 11422321, at *13 (S.D. Fla. Apr. 27, 2015) (denying motion to dismiss claims brought under North Carolina because "it would be premature to engage in a choice-of-law analysis").  Thus, a pleading that "leave[s] open the possibility that the laws of another jurisdiction" other than Florida will apply to a fraudulent transfer claim precludes dismissal on limitations grounds.  *Steinberg ex rel. Lancer Mgmt. Grp. LLC v. Alpha Fifth Grp.*, No. 04-60899-CIV-MARRA, 2010 WL 1332844, at *2 (S.D. Fla. Mar. 30, 2010); *see Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 806780, at *11 (S.D. Fla. Mar. 26, 2009) (same).

Here, the "other applicable law" identified in the Complaint for purposes of the Trustee's section 544(b)(1) claim "include[s] the Uniform Fraudulent Transfer Act as adopted by Ohio…and/or by Florida."  (Complaint ¶ 68).  On a motion to dismiss, it is premature to decide that Ohio law would not be other "applicable law" for the Trustee's section 544(b)(1) claim. Although The Limited had nationwide operations, it was founded in Ohio, had its principal place of business there, and had creditors in Ohio.  Moreover, Defendants cannot plausibly contend that Florida has such a keen interest in this dispute that only its law could apply under the "significant relationship" test, while at the same time *moving to transfer venue **out** of Florida*.

Accordingly, the Court should not rule out the applicability of Ohio law at the pleading stage.  For present purposes, therefore, the UFTA's one-year period would not be triggered against a creditor unless the creditor discovered or reasonably could have discovered both the existence and the fraudulent nature of the Transfer before January 17, 2016.

### 2. The Florida Supreme Court Would Adopt the Majority Approach and Require Discovery of the Fraudulent Nature of the Transfer.

Engaging in a premature choice of law analysis at this stage would be further problematic because it would necessitate making an *Erie* guess on Florida law that was not raised or briefed in the Motion.  The Florida Supreme Court has not yet ruled on whether the UFTA's discovery rule requires notice of the fraudulent nature of a transfer in addition to notice of the existence of the transfer, and thus an *Erie* guess is required to predict "how the highest court would decide." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011).  "Decisions of the intermediate appellate courts—here, the Florida District Courts of Appeal—provide data for this prediction" and are usually followed, but a federal court "may disregard these decisions if persuasive evidence demonstrates that the highest court would conclude otherwise." *Id.*  Here, there is strong reason to believe that the Florida Supreme Court would reach a different result than that reached by the Florida Second District Court of Appeal in *National Auto* because the Court there both: (1) failed to appropriately canvas the existing law in other jurisdictions on this issue; and (2) ignored the UFTA's statutory mandate and Florida Supreme Court precedent requiring strong consideration of the majority approach adopted in other states.

At the outset, the Second District Court of Appeal in *National Auto* failed to appreciate that the majority of other jurisdictions interpreting the statute have required discovery of the fraudulent nature of the transfer for the discovery rule to be triggered.  Rather it merely noted that "courts have reached differing results."  192 So. 3d at 503.  Both decisions the court cited for the proposition that discovery of the transfer's existence is enough, however, were unreported, federal decisions (not state supreme court decisions of jurisdiction that have enacted the UFTA). Moreover, one of those decisions was subsequently abrogated by the Sixth Circuit's decision in

14

*Fairfield Finance*.  Those two decisions alone do not suggest an equal split of state-law authority that would warrant disregarding the majority approach to a uniform law such as the UFTA.

The *National Auto* decision also failed to recognize that the majority of courts have actually considered the issue determined that the UFTA discovery rule is only triggered upon discovery of the fraudulent nature of the transfer.  It is an outlier, and the Sixth Circuit expressly rejected *National Auto* in favor of "the numerous state court decisions" that determined "discovery for purposes of a fraudulent transfer claim requires both knowledge of the transfer and knowledge of the transfer's fraudulent nature."  *Bash*, 834 F.3d at 673 (gathering cases).  Other recent decisions have likewise emphasized that the majority rule of requiring notice of the fraudulent nature of the transfer to trigger the one-year discovery rule.  *See, e.g., Official Comm. of Unsecured Creditors of Great Lakes Quick Lube LP v. Theisen,* 920 N.W.2d 356, 364 n.5 (Wis. Ct. App. 2018) (gathering cases); *Lubin v. Markowitz (In re Markowitz)*, No. 14-68061-BEM, 2017 WL 1088273, at *4 (Bankr. N.D. Ga. Mar. 22, 2017) (same).

The *National Auto* court's failure to consider the majority approach provided by other courts was a significant error.  First, the Florida Supreme Court "has recognized that in interpreting a statute modeled after a uniform law, it is pertinent to resort to the holdings in other jurisdictions where the act is in force."  *Ulloa v. CMI, Inc.*, 133 So. 3d 914, 923 (Fla. 2013) (internal quotations and citations omitted); *see, e.g., Valentine v. Hayes*, 102 Fla. 157, 135 So. 538 (1931) (A uniform law that "has been adopted in Florida should receive a uniform interpretation and construction in all of the states where it prevails, if the beneficial purpose of having a uniform law on the subject is to be [served], and it is pertinent to resort to the holdings in other jurisdictions where this act is in force in order to arrive at the interpretation and construction of the act which should be followed in Florida.").  Second, in enacting the UFTA, the Florida legislature adopted an express statutory

15

mandate that Florida's version of the UFTA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of the law among states enacting it." FLA. STAT. ANN. § 726.112 (emphasis added).  Thus, both Florida Supreme Court precedent and an express statutory mandate require application and construction of the UFTA discovery rule that adheres to the majority approach in other jurisdictions.  The Second District Court of Appeal ignored those mandates.

At a minimum, the clear error on the face of the *National Auto* opinion necessitates a thorough *Erie* prediction of how the Florida Supreme Court would resolve the issue before this Court can conclude that discovery of the mere existence of the transfer is enough under the UFTA's discovery rule.  That analysis is premature here because: (a) the choice of law between Ohio law and Florida law is itself premature, *supra*; and (b) the Motion failed to raise or brief the *Erie* issue.[10]  For purposes of the Motion, therefore, this Court need not and should not determine that discovery of the transfer alone is sufficient to start the clock on the UTFA's one-year period.

Moreover, this is purely an academic issue for purposes of the Motion.  Put simply, there is no need for the Court to make a prediction of Florida law because the Motion should be denied even if discovery of the transfer alone sufficed to trigger the one-year discovery period.  As discussed above, the Complaint does not allege—and Defendants do not even argue—that every single creditor reasonably could have discovered the existence of the transfer prior to January 17, 2016.  As such, the Trustee's section 544(b)(1) claim is not time-barred.

---

[10] Given that the Motion should be denied for other reasons and that the Motion did not even brief the *Erie* issue, the Trustee has not burdened the Court with additional *Erie* briefing beyond that necessary to flag the issue and need for further briefing.  The Trustee will provide further briefing on the *Erie* issue and prediction of how the Florida Supreme Court would resolve the issue at the appropriate procedural juncture or upon further guidance from the Court.

**E.      REQUEST FOR LEAVE TO AMEND IN THE ALTERNATIVE.**

The Motion should be denied in its entirety.  The Motion misapprehends the applicable law, and its limitations analysis is focused on the wrong person at the wrong time.  Nothing on the face of the Motion warrants dismissal.  And the Court should not permit Defendants to have a second bite at the apple in their reply brief.

To the extent that the Court is willing to entertain new arguments (responsive or not) raised in Defendants' reply brief and consequently finds the Complaint deficient in any respect, however, the Trustee should be given leave to amend in accordance with Federal Rule of Civil Procedure 15(a)(2).  The Trustee would have had a right to amend its pleading as a matter of course under Rule 15(a)(1)(B) in response to any valid argument raised in a Rule 12(b)(6) motion.  But the Motion raised no such argument and there was no need to amend.  The Defendants should not gain a tactical, procedural advantage through raising arguments in a reply brief that the Trustee could have addressed through an amendment as of right had Defendants asserted those arguments in the Motion itself.  Accordingly, the Trustee should be granted leave to amend if the Motion is granted.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Trustee respectfully requests that the Court deny the Motion and grant the Trustee such other relief it deems just and proper.

Dated: April 15, 2019

**REID COLLINS & TSAI LLP**

/s/ *Gregory S. Schwegmann*

Eric D. Madden
Michael J. Yoder
Gregory S. Schwegmann
1601 Elm Street, Suite 4250
Dallas, Texas 75201
T: (214) 420-8900
F: (214) 420-8909
gschwegmann@rctlegal.com
emadden@rctlegal.com
myoder@rctlegal.com

**DAMIAN & VALORI LLP**

Kenneth Dante Murena
Florida Bar No. 147486
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
T: (305) 371-3960
F: (305) 371-3965
kmurena@dvllp.com

*Counsel for Plaintiff*

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 15, 2019, a copy of the foregoing document is being

served this day on all parties of record identified below:

Jodi A. Avila
BAKER & McKENZIE LLP
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
jodi.avila@bakermckenzie.com

Michael A. Duffy
Michael C. McCutcheon
BAKER & McKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
michael.duffy@bakermckenzie.com
michael.mccutcheon@bakermckenzie.com

*Counsel for Defendants*

/s/ *Kenneth Dante Murena*
Kenneth Dante Murena